UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBETTE J. MORIN,

                                      *Plaintiff*,

                   -against-

HON. JAMES C. TORMEY, Individually and in his Official
Capacity as District Administrative Judge of the Fifth Judicial
District, HON. BRYAN R. HEDGES, Individually and in his Official
Capacity as Judge of the Onondaga Family Court, JOHN R.
VONINSKI, Individually and in his Official Capacity as Executive
Assistant to the District Administrative Judge, and WILLIAM F.
DOWLING, Individually and in his Official Capacities as Law Clerk
to FCJ Bryan Hedges and as Fifth District Court Attorney Referee,
THE OFFICE OF COURT ADMINISTRATION OF THE UNIFIED
COURT SYSTEM, and THE STATE OF NEW YORK,

                                        *Defendants*.
_____

**DEFENDANTS'
MEMORANDUM**

5:07-CV-0517
(DNH)(GJD)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## RULE 12(B)(1), 12(H)(3) and 12(B)(6) MOTION TO DISMISS

                      ANDREW M. CUOMO
                      Attorney General of the State of New York
                      Attorney for Defendants Tormey, Hedges, Voninski,
                      Dowling, New York State Office of Court
                      Administration and the State of New York
                      The Capitol
                      Albany, NY  12224

Charles J. Quackenbush
Assistant Attorney General, Of Counsel
BRN 601683
Telephone:  (518) 402-2270
charles.quackenbush@oag.state.ny.us

**Table of Contents**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I
      PLAINTIFF'S ACTION IS JURISDICTIONALLY BARRED
      BY THE ELEVENTH AMENDMENT TO THE
      UNITED STATES CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      B.    FMLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      C.    "Official capacity" defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      D.    "Individual capacity" defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.    Relief sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            1. Equitable relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            2. Compensatory relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT II
      PLAINTIFF FAILS TO PRESENT RETALIATION CLAIMS
      UPON WHICH RELIEF MAY BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    Personal involvement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      B.    "Protected speech" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            1. "Public concern v. personal interest" . . . . . . . . . . . . . . . . . . . . . . . 18
            2. "Substantial or motivating factor" . . . . . . . . . . . . . . . . . . . . . . . . . 21
      C.    "Political activity" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      D.    Insufficiency of factual allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## Preliminary Statement

Plaintiff is an attorney, employed by the New York State Office of Court Administration (OCA).  The defendants in this action are the Administrative Judge for the Fifth Judicial District of the State of New York, a Judge of the Onondaga County Family Court, two OCA administrative officials (one former, one current), the OCA, and the State of New York.  Against all of the defendants the plaintiff seeks various forms of compensatory and equitable relief under the Family Medical Leave Act (FMLA) and 42 U.S.C. §1983.  The defendants respectfully submit this Motion under Fed. R. Civ. P. Rules 12(b)(1), 12(h)(3) and 12(b)(6).

## Statement of the Case

Plaintiff asserts that she has been an employee of the OCA since 1983.  From 1994 to the spring of 2007 she was Chief Clerk of the Onondaga Family Court, in "the highest non-judicial pay grade for Chief Clerks and Agency Managers ("CCAMs") in the Fifth Judicial District." Complaint, ¶35.  As a CCAM, the plaintiff's jurisdictional classification was exempt class/confidential.  For public information concerning title standards for New York State Court employees, *see* www.courts.state.ny.us/careers/titlestandards/group2.shtml.  For the Chief Clerk IV title standard *see* www.courts.state.ny.us/careers/titlestandards/oldformat/9461003.pdf.[1]

In 2006 the Inspector General for the Unified Court System ("IG/UCS") conducted an independent investigation into various aspects of the plaintiff's conduct in the workplace.[2]  The

---

[1]  A copy of plaintiff's former title standard description is provided with the Declaration of AAG Quackenbush.  As an exempt-class, management confidential official the plaintiff served at the pleasure of the OCA and could have been terminated or demoted at anytime without cause.  As such, even if she experienced politically-motivated impacts upon her employment, such circumstances would not implicate the First Amendment.  *See, e.g. Butler v. New York State Dept. of Law, et al*, 998 F.Supp. 336 (SDNY 1998).  However, since plaintiff presents no protected speech or activities upon which a retaliation analysis might embark, this issue need not be examined further here.

[2]  The Office of the Inspector General for the New York State Unified Court System is located at 26 Broadway, New York, New York 10004.

IG/UCS issued a report recommending that the plaintiff be removed from her office.  Based upon the report/recommendation, plaintiff was demoted and reassigned; on March 8, 2007 she began employment as a Court Attorney Referee for Oneida and Oswego Counties.  However, plaintiff has absented herself from work since approximately March 29, 2007.  Complaint, ¶¶106-109, 121.

The factual allegations in the Complaint are, unfortunately, drafted in such a way as to prevent simple distillation.  Over 121 paragraphs the plaintiff alleges a farrago of events spanning a seven-year period, often without reference to dates or actors.  *E.g.* Complaint, ¶97.  Moreover, the Complaint is replete with conclusory, unsupported, *ad hominem* accusations presented "upon information and belief."  *E.g.* Complaint, ¶¶68-73, 82.  Since plaintiff's action should be dismissed as a matter of law the defense, and the Court, may forego a dissection of those allegations.

The Complaint does articulate three proposed theories of relief.  *Id.*, pp.23-25.  First, invoking 42 U.S.C. §1983, plaintiff asserts that she has experienced a hostile work environment and adverse employment actions in retaliation for her exercise of free speech, protected under the First/Fourteenth Amendments.  Complaint, ¶¶123-129.  Second, again invoking 42 U.S.C. §1983, plaintiff asserts that she has experienced a hostile work environment and adverse employment actions in retaliation for her engaging in, or refraining from political activity, as protected under the First/Fourteenth Amendments.  Complaint, ¶¶131-137.  Third, plaintiff asserts that she has experienced a hostile work environment and adverse employment actions after taking periods of leave to attend to personal medical conditions, in violation of the anti-retaliation provision of the Family Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq*.  Complaint, ¶¶139-142.  For the reasons discussed below, the action should be dismissed in its entirety.

## POINT I

**PLAINTIFF'S ACTION IS JURISDICTIONALLY BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

The Eleventh Amendment to the United States Constitution embodies the federal principle of sovereign immunity.  It provides as follows:

> the Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  The Amendment not only prohibits suits against states brought by citizens of other states in federal court, but, implicitly, suits against a state in federal court brought by its own citizens.  *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).  Sovereign immunity under the Eleventh Amendment is a bar to subject matter jurisdiction in federal court.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73 (1996).

The FMLA generally requires covered employers to grant employees who have worked for twelve months (or 1250 hours in twelve months) up to twelve weeks' leave during any twelve month period in order to attend to the medical needs of a family member.  *See* 29 U.S.C. §2612(a)(1)(A) (newborn son/daughter); §2612(a)(1)(C) (seriously ill spouse, son/daughter or parent).  Section 2612(a)(1)(D) requires an employer to allow leave for a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  This section of the FMLA is commonly referred to as the "self-care" provision.  *See, e.g. Touvell v. Ohio OMRDD*, 422 F.3d 392, 394 (6th Cir. 2005).

Plaintiff invokes 29 U.S.C. §2615(a)(1) as the source of her FMLA cause of action. Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  However,

4

plaintiff does not accurately describe the statutory basis for her FMLA claim.

Plaintiff has sworn that, in 2005, she took two periods of leave in order to attend to her own personal medical conditions.  Complaint, ¶47.[3]  As such, if the plaintiff has had any rights under the FMLA, the source of those rights would be 2612(a)(1)(D).  Moreover, plaintiff does not allege that she was denied or otherwise deprived of leave prior to taking it; rather, she contends that she experienced adverse employment impacts in retaliation for leave actually taken.  As such the plaintiff does not present an "interference" claim under §2615(a)(1); rather, plaintiff seeks to pursue a retaliation claim under 29 U.S.C. §2614(a)(1), which protects an employee from discharge or demotion by an employer if that action is motivated by the employee's protected FMLA leave.  *See e.g., Hale v. Mann, et al*, 219 F.3d 61, 69-70 (2nd Cir. 2000); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

The plaintiff has named New York State, the New York OCA and four State officials as defendants.  Plaintiff bears the burden to establish the subject matter jurisdiction of this Court.  Fed. R. Civ. P. Rule 12(h)(3); *In Re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2nd Cir. 1993).  Unless the plaintiff can demonstrate that the State has waived immunity on behalf of itself and its agencies, or that Congress has enacted a valid Eleventh Amendment abrogation, the State, its agency and its officials are immune from suit.  *See, e.g. Posr v. Court Officer Shield #207, et al*, 180 F.3d 409, 414 (2nd Cir. 1999) (OCA is "arm of the State" under 11th Amdt.).

**A.      42 U.S.C. §1983**

New York State has not waived its sovereign immunity against private suit in federal court

---

[3] Plaintiff also asserts that, since March 29, 2007, she has absented herself from work on the advice of a physician.  Complaint, ¶121.  Even if regarded as a "medical leave" under the FMLA this period began subsequent to plaintiff's alleged material events.

under §1983.  Its immunity has not been abrogated by Congress.  *Quern v. Jordan*, 440 U.S. 332 (1979); *Edelman*, 415 U.S. 651.  In this regard it is well established that Congress did not intend that states, their agencies or officials would be regarded as "persons" subject to liability under §1983.  *Will v. Michigan Dept. of State Police, et al*, 491 U.S. 58, 69-72 (1989).  A suit purporting to be brought against an "individual capacity" state official, which is actually a suit against a state office, will be treated as a suit against the state itself.  Substance must prevail over form; a litigant may not "circumvent congressional intent by a mere pleading device."  *Will* at 71; see also *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).

**B.**     **FMLA**

New York State has not waived its sovereign immunity against suit under the FMLA. When Congress enacted the FMLA it sought to abrogate Eleventh Amendment immunity via its power to protect equal protection interests under §5 of the Fourteenth Amendment.  *Hale*, 219 F.3d 61, 67-68 (2nd Cir. 2000); *McGregor v. Goord, et al*, 18 F.Supp.2d 204, 207-209 (NDNY 1998) (McAvoy, C.J.).  The FMLA and abrogation issues have been extensively examined in a number of circuits.  *See Touvell*, 422 F.3d 392, 396-97 (6th Cir. 2005) (surveying federal decisions).

It is clear that Congress meant to abrogate Eleventh Amendment sovereign immunity via the FMLA.  Within the context of the "family-care" provision of §2612(a)(1)(C), the abrogation has survived judicial review; a majority of the Supreme Court have found that this part of the FMLA is congruent and proportional to gender-based equal protection interests which Congress may seek to protect under the Fourteenth Amendment.  *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721 (2003), *but see id*., pp.744-759 (dissent by Justices Kennedy, Scalia and Thomas).  However, the abrogation pertaining to the "self-care" provision of §2612(a)(1)(D) has been invalidated.

In *Hale*, 219 F.3d 61 a Director of a youth detention facility operated by the State Office of

Children and Family Services (OCFS) was terminated from his job while he was away on sick

leave for job-related stress.  *Id*. at 65-66.  He subsequently brought suit claiming, *inter alia*, that

OCFS and its Commissioner had violated his right to "self-care" leave under 26 U.S.C.

§2612(a)(1)(D), and had retaliated against him for taking such leave in violation of §2614(a)(1).

*Id*. at 66-68.  The District Court found that the OCFS, and its Commissioner, were immune from

suit under the Eleventh Amendment and dismissed the plaintiff's action.[4]  Upon appeal the Second

Circuit affirmed.  After resolving that Congress had indeed meant to abrogate states' immunity, the

court found that the abrogation pertaining to the "self-care" provision of the FMLA was invalid:

> In light of Congress' failure to specifically find that women are disproportionately
> affected by "serious health conditions," this gender-neutral grant of leave is
> overbroad.   There is no evidence that this conferment of federally protected leave is
> tailored to remedy sex-based employment discrimination.  Instead, it seems grossly
> incongruent and disproportionate to try to remedy intentional sex discrimination
> with a statute that, in the words of the Seventh Circuit, "creates substantive rights"
> and "statutory entitlements" that do not permit an employer to "defend by saying
> that it treated all employees identically." *Diaz v. Fort Wayne Foundry Corp.*, 131
> F.3d 711, 712 (7th Cir. 1997).  By making a "substantive change" in state
> employees' rights, Congress has exceeded its power to "remedy or prevent
> unconstitutional actions." *City of Boerne*, 521 U.S. at 519; *see also id*. at 527
> ("Any suggestion that Congress has a substantive, non-remedial power under the
> Fourteenth Amendment is not supported by our case law.").  The rights conferred
> by the FMLA in this case are "so out of proportion to a supposed remedial or
> preventive object that it cannot be understood as responsive to, or designed to
> prevent, unconstitutional behavior." *Id*. at 532.
>
> * * * *
>
> Thus, we find that Congress did not have the authority to abrogate the sovereign
> immunity of the states on claims arising under the provisions at issue here.  Its
> attempt to do so was not congruent or proportional to the harms targeted by the
> Fourteenth Amendment.  It is important to note, however, that we only pass on the

---

[4] In the District Court the case proceeded through pleadings and discovery; a judgment of dismissal was entered
upon the defendants' Rule 56(b) Motion for Summary Judgment.  In this action, the issue of sovereign immunity
should be determined as a matter of law under Rule 12(b)(1).

particular provisions at issue here, medical leave to deal with one's own "serious health condition," 29 U.S.C. §2612 (a)(1)(D), and the related retaliation section, *see id*. 2614(a)(1), at least when used in conjunction with Section 2612(a)(1)(D).

*Hale*, 219 F.3d 68-69 (*citations/quotations in original*).[5]  The plaintiff in *Hale* sought to proceed under the same sections of the FMLA as the instant plaintiff invokes.  The law is clear; plaintiff's FMLA claims against the State, its agencies and its officials, are jurisdictionally barred.

**C.     "Official capacity" defendants**

Judge James C. Tormey, Judge Bryan Hedges, William Dowling and John Voninski are listed as defendants in their official capacities.  Each are, and were, employees of the OCA.  It is well established that New York State is the real party in interest as to such "official capacity" claims.  Plaintiff's claims against New York State and the OCA are jurisdictionally barred; claims against "official capacity" defendants are as well.  *See, e.g. Kentucky*, 473 U.S. 159; *Farid v. Smith*, 850 F.2d 917, 921 (2nd Cir. 1988); *McGregor*, 18 F.Supp.2d at 206.

**D.     "Individual capacity" defendants**

Judge Tormey, Judge Hedges, Mr. Dowling and Mr. Voninski are also listed as defendants in their ostensible "individual capacities."  Notwithstanding the Eleventh Amendment, in some circumstances a private plaintiff may sue an "individual capacity" state official in federal court in order to ensure that the officer's future conduct is in compliance with federal law.  *Ex parte Young*, 209 U.S. 123 (1908); *McGregor*, 18 F.Supp.2d at 209-210.[6]  Under the *Young* exception to

---

[5]  *See also, e.g. Chafetz v. Roosevelt Island Operating Corp*, 2000 U.S. Dist. LEXIS 12934 (SDNY 9/8/00); *Sims v. Univ. of Cincinnati*, 219 F.3d 559 (6th Cir. 2000); *Garrett v. Univ. of Alabama at Birmingham Board of Trustees*, 193 F.3d 1214 (11th Cir. 1999); *Russell v. United States Dept. of the Army*, 191 F.3d 1016 (9th Cir. 1999); *Mann v. Haigh*, 120 F.3d 34 (4th Cir. 1997).

[6]  It should be observed that, against "official capacity" defendants as well, prospective equitable relief would not be precluded by the Eleventh Amendment; such actions "are not treated as actions against the State."  *Kentucky*, 473 U.S. at 167, n 14; *Ex parte Young*, 209 U.S. at 159-160.

sovereign immunity, a private plaintiff may pursue narrowly confined relief against a state official in federal court.  A plaintiff may only seek prospective equitable relief with which to prevent an official from future constitutional violations; they cannot seek retrospective equitable remedies, nor may they seek compensatory relief against an "individual" official when an award will be paid from the State treasury.  *Edelman*, 415 U.S. at 663 (*citing Great Northern Life Ins. Co. v. Read*, 322 U.S. 47 (1944); *Kennecott Copper Corp. v. State Tax Comm'n*. 327 U.S. 573 (1946); *McGregor*, 18 F.Supp.2d at 209-210.  Moreover, the operation of the *Young* doctrine depends upon a genuine "individual capacity" scenario.  This principle is evident in *United States v. Lee*, 106 U.S. 196 (1882) and *Tindal v. Wesley*, 167 U.S. 204 (1897), decisions upon which Court relied upon in *Young*.

In *Lee*, *Tindal* and *Young*, suits against individual state agents were permitted to proceed since the remedies sought did not purport to conclude the rights of the Government.  In this action, however, the plaintiff seeks to achieve what the Court has taken care to proscribe, a judgment binding the government itself.  The substance of plaintiff's allegations must prevail over the style imposed upon the caption; the Complaint only describes actions taken in defendants' official capacities within the scope of their authority.  *See, e.g. Chayoon v. Chao, et al*, 355 F.3d 141 (2nd Cir. 2004); *McGregor*, 18 F.Supp.2d at 209-210.  The *Young* doctrine cannot come into effect by way of an "individual capacity" incantation.

*McGregor* in particular provides instructive precedent.  The plaintiff in that action had served as a Correctional Officer with the New York Department of Correctional Services.  *Id*. at 205.  He took time out from work in order to attend to his pregnant wife; thereafter, he was suspended, disciplined and discharged from DOCS service.  *Id*.  The plaintiff brought suit under the FMLA against DOCS executives, seeking equitable and compensatory relief.   The defense

9

moved to dismiss under Fed. R. Civ. P. Rules 12(b)(1) and 12(h)(3).  *Id*. at 205-206.  Chief District

Court Judge McAvoy, applying the analytical framework set forth in *Katzenbach v. Morgan*, 384

U.S. 641, 651 (1966) found that the FMLA did not contain a valid Eleventh Amendment

abrogation.  *Id*. at 209.  In *McGregor*, as in this case, agency officials were nominally joined as

defendants in their individual capacities.  Chief Judge McAvoy, insisting upon substance over

form, enforced sovereign immunity in their favor:

> A plaintiff is entitled to seek prospective injunctive relief against a state official in
> his individual capacity without running afoul of the Eleventh Amendment. . . . A
> plaintiff, however, is not entitled to seek retroactive relief in the form of money
> damages against an individual when those monies will necessarily be paid out of the
> State treasury.  The Supreme Court has held "that a suit by private parties seeking
> to impose a liability which must be paid from public funds in the state treasury is
> barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663. . . .Under the
> FMLA, plaintiff would be entitled to damages equal to lost wages and benefits,
> interest, and appropriate equitable relief.  29 U.S.C. §2617.  To the extent that
> plaintiff is seeking damages in the form of back pay, those damages are barred by
> the Eleventh Amendment.  *Dwyer v. Regan*, 777 F.2d 825, 836 (2nd Cir. 1985)
> ("claim for backpay seeks 'the payment of . . . money which . . . should have been
> paid, but was not.  If these sums should have been paid, they should have been paid
> by the State, not by [a defendant] in his individual capacity, and an award of back
> pay would necessarily have to be satisfied from State funds.")

*Id*. at 209 (*some citations omitted*).  The issues of relief examined in *McGregor* are the same as

those presented in this action.[7]  There is no material difference between the status of the

"individuals" named in *McGregor* and those named herein.  In both cases, relevant events occurred

(if at all) in the context of the individual defendants' employment, indeed, in their workplaces.  In

*McGregor* and in this action, a State agency - whether the DOCS or the OCA - would bear the

burden to implement any equitable decrees ostensibly ordered against "individual capacity"

---

[7] *McGregor*, decided in 1998, involved the Eleventh Amendment abrogation contained in the "family-care"
provision of the FMLA.  Two years later in *Hale v. Mann, et al*, 219 F.3d 61 (2nd Cir. 2000) the Second Circuit cited
*McGregor* with approval as it invalidated the abrogation contained in the "self-care" provision.  *Id*. at 67.
Subsequently, in *Nevada Dept. of Human Resources v. Hibbs, et al*, 538 U.S. 721 (2003) the Court found that the
"family-care" abrogation was permissible under the Fourteenth Amendment.  *Hale*, however, still holds.

defendants.  And, as in *McGregor*, any damages and/or back pay award would have to be drawn from State  funds.  *See, e.g., Mohammed v. D.H. Farney Contractors*, 881 F.Supp. 110 (SDNY 1995).  Consequently, all of the plaintiff's claims against defendants in their individual capacities should be barred by the Eleventh Amendment.

**E.      Relief sought**

Under §1983 and the FMLA the plaintiff seeks various forms of relief; declaratory and injunctive decrees, compensatory damages for psychological injuries, lost wages and retroactive employment benefits, with interest.  Complaint, pp.26-27.  The Eleventh Amendment bars each.

**1.      Equitable relief**

Plaintiff seeks a declaration that defendants' conduct violated her federally protected rights under §1983 and the FMLA.  Plaintiff also demands "reinstatement to her previous position with all rights, seniority and benefits appurtenant thereto that would have been earned had her position not been abolished."  Complaint, p.26.

As discussed above, the "self-care" provision of the FMLA is not applicable to New York State or the Office of Court of Administration, the agency which has employed the plaintiff and the "individual capacity" defendants.  As the Second Circuit and other federal courts have made clear, Congress overstepped its authority under the Fourteenth Amendment when it sought to create a new substantive right under 29 U.S.C. §2612(a)(1)(D).  The injunctive and declaratory relief sought by the plaintiff would not bind individual defendants, whatever their ostensible capacity.  It would only bind the State and the OCA, despite the fact that there is no subject matter jurisdiction over those entities; by this means, plaintiff would achieve the sort of "end run" around sovereign immunity which the Supreme Court has resolved to foreclose.  *Green v. Mansour*, 474 U.S. 64, 72-73 (1985).

Under either the FMLA or §1983, the plaintiff could seek to proceed against individual defendants for prospective equitable relief only if such relief would serve to curtail ongoing violations of federally protected rights.  As discussed above, the plaintiff has no rights against her employer under 29 U.S.C. §2612(a)(1)(D).  As discussed below, plaintiff has presented no violation of First Amendment rights for purposes of §1983.  As such, there is no future conduct which the Court might enjoin.

Moreover, the plaintiff does not seek to prospectively enjoin future, ongoing violations of ostensible rights.  Each aspect of plaintiff's requested equitable relief is meant to reach back in time, modify past events, and procure the plaintiff a new *status quo*.  The phrasing of plaintiff's requests for declaratory and injunctive relief make plain their rearward quality.  Plaintiff would have the Court "[d]eclare defendants' conduct complained of herein to be violation of plaintiff's rights. . . ."  Complaint, p.26.  Plaintiff goes on to demand "[r]einstatement to her *previous position* with all rights, seniority and benefits appurtenant thereto that *would have been earned* had her position not been abolished."  Complaint, pp.26, 27 (*emphasis added*).

Plaintiff may contend that, despite this plain language, her declaratory and injunctive relief requests should be construed as forward-looking.  However, phrasing and construction are beside the point.  As the Supreme Court observed in *Seminole Tribe*,

> the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment. *See, e. g., Cory v. White*, 457 U.S. 85, 90, 72 L. Ed. 2d 694, 102 S. Ct. 2325 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought").  We think it follows *a fortiori* from this proposition that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity.  The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury," *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 48, 130 L. Ed. 2d 245, 115 S. Ct. 394 (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of

12

> private parties," *Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 146
> (internal quotation marks omitted).

*Id.*, 517 U.S. at 58 (*citations & quotations in original*).  *See also Green*, 474 U.S. at 68; *Edelman*,

415 U.S. at 663; *Kennecott Copper Corp.*, 327 U.S. 573; *McGregor*, 18 F.Supp.2d at 209-210.

As such, whether against the State, the OCA, official defendants or individual defendants, these

remedies are jurisdictionally precluded.

**2.      Compensatory relief**

The plaintiff seeks compensatory relief against her employer under 29 U.S.C. §2617 as

well as under 42 U.S.C. §1983.  However, under the myriad decisions rendered since *Edelman*,

plaintiff's compensatory claims are clearly barred.  Moreover, as discussed above, in light of

*McGregor* it should be clear that compensatory relief is unavailable against these defendants

notwithstanding their "individual" designations.

In *McGregor* the plaintiff had served as a Correctional Officer with the New York

Department of Correctional Services.  *Id*. at 205.  He took time out from work in order to attend to

his pregnant wife; thereafter, he was suspended, disciplined and discharged from DOCS service.

*Id*.  The plaintiff brought suit under the FMLA against DOCS executives, seeking equitable and

compensatory relief.   The defense moved to dismiss under Fed. R. Civ. P. Rules 12(b)(1) and

12(h)(3).  *Id*. at 205-206.  Chief District Court Judge McAvoy, applying the analytical framework

set forth in *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966) found that the FMLA did not contain

a valid Eleventh Amendment abrogation.  *Id*. at 209.  As in this case, agency officials were

nominally joined as defendants in their individual capacities.  Chief Judge McAvoy, insisting upon

substance over form, enforced sovereign immunity on the defendants' behalf:

> A plaintiff is entitled to seek prospective injunctive relief against a state official in
> his individual capacity without running afoul of the Eleventh Amendment. . . . A

> plaintiff, however, is not entitled to seek retroactive relief in the form of money
> damages against an individual when those monies will necessarily be paid out of the
> State treasury.  The Supreme Court has held "that a suit by private parties seeking
> to impose a liability which must be paid from public funds in the state treasury is
> barred by the Eleventh Amendment."  *Edelman*, 415 U.S. at 663. . . .Under the
> FMLA, plaintiff would be entitled to damages equal to lost wages and benefits,
> interest, and appropriate equitable relief.  29 U.S.C. §2617.  To the extent that
> plaintiff is seeking damages in the form of back pay, those damages are barred by
> the Eleventh Amendment.  *Dwyer v. Regan*, 777 F.2d 825, 836 (2nd Cir. 1985)
> ("claim for backpay seeks 'the payment of . . . money which . . . should have been
> paid, but was not.  If these sums should have been paid, they should have been paid
> by the State, not by [a defendant] in his individual capacity, and an award of back
> pay would necessarily have to be satisfied from State funds.")

*Id*. at 209 (*some citations omitted*).  The issues of relief examined in *McGregor* are the same as

those presented in this action.[8]  There is no material difference between the status of the

"individuals" named in *McGregor* and those named herein.  In both cases, relevant events occurred

(if at all) in the context of the individual defendants' employment, indeed, in their workplaces.  In

*McGregor* and in this action, a State agency - whether the DOCS or the OCA - would bear the

burden to implement any equitable decrees ostensibly ordered against "individual capacity"

defendants.  And, as in *McGregor*, it is plain that any damages and/or back pay award would have

to be drawn from State  funds.  *See, e.g., Mohammed v. D.H. Farney Contractors*, 881 F.Supp. 110

(SDNY 1995).  Consequently, all of the plaintiff's claims against defendants in their individual

capacities are barred by the Eleventh Amendment.

---

[8]  *McGregor*, decided in 1998, involved the Eleventh Amendment abrogation contained in the "family-care"
provision of the FMLA.  Two years later in *Hale v. Mann, et al*, 219 F.3d 61 (2nd Cir. 2000) the Second Circuit cited
*McGregor* with approval as it invalidated the abrogation contained in the "self-care" provision.  *Id*. at 67.
Subsequently, in *Nevada Dept. of Human Resources v. Hibbs, et al*, 538 U.S. 721 (2003) the Court found that the
"family-care" abrogation was permissible under the Fourteenth Amendment.  *Hale*, however, still holds.

**POINT II**

**PLAINTIFF FAILS TO PRESENT RETALIATION CLAIMS
UPON WHICH RELIEF MAY BE GRANTED**

Under the FMLA, 29 U.S.C. §2612(a)(1)(D) and §2614(a)(1), the plaintiff seeks to pursue a claim that defendants retaliated against her for taking personal medical leave.  Complaint, ¶¶139-142.  However, as discussed above, the plaintiff has no such federal cause of action.  As such the claim will not be examined here.[9]

Under the First Amendment via 42 U.S.C. §1983 the plaintiff claims to have suffered two forms of retaliation.  First, plaintiff declares that defendants have inflicted adverse employment actions in retaliation for her engagement in protected speech.  Complaint, ¶¶123-129.  Second, plaintiff declares that plaintiffs have retaliated against plaintiff's "political activity."  *Id*., ¶¶131-137.  As argued above, these causes of action should also be barred by the Eleventh Amendment; the plaintiff has presented no genuine "individual capacity" controversy and the real party in interest in opposition to these claims is New York State.  Jurisdiction aside, the plaintiff presents no activities which can be deemed "protected" under the First Amendment.  Moreover, plaintiff's allegations linking "protected activities" to subsequent events are attenuated, conclusory and insufficient under Fed. R. Civ. P. Rule 12(b)(6).

In order to present a cause of action under 42 U.S.C. §1983 the plaintiff must demonstrate (1) that a person has deprived her of a federal right and (2) that the person who deprived the plaintiff of that right acted under the color of State law.  *See, e.g. Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *EVAC, LLC v. Pataki, et al*, 89 F.Supp.2d 250 (NDNY 2000).  To the extent any

---

[9]  Even if it was examined, it would not pass review under Rule 12(b).  While plaintiff took two periods of personal sick leave in the spring and fall of 2005, plaintiff does not dispute that the proximate cause of her March, 2007 demotion/reassignment was the recent report/recommendation of the IG/UCS.

defendants participated in events underlying plaintiff's claims, they did so as State actors within the context of their employment with the OCA.

**A.      Personal involvement**

Liability under 42 U.S.C. §1983 is predicated upon a showing of personal involvement in a constitutional violation.  It cannot be imposed derivatively, by way of the doctrine of *respondeat superior* or another theory.  *See, e.g. Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Snider v. Dylag*, 188 F.3d 51, 54 (2nd Cir. 1999).  Personal involvement can generally be shown in four ways; "[a] supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation."  *Sealey v. Giltner*, 116 F.3d 47, 51 (2nd Cir. 1997) (*citing Williams v. Smith*, 781 F.2d 319 (2nd Cir. 1986)).

Judge James Tormey is alleged to have personally met with the plaintiff in Judge Tormey's chambers in "summer 2002."  Complaint, ¶¶39-43.  As discussed below, their alleged disagreement over plaintiff's willingness to engage in political activities is the source of plaintiff's §1983 causes of action.  However, from that point in time, Judge Tormey is not alleged to have personally taken part in material events.  To the extent plaintiff seeks to attribute liability to Judge Tormey for activities of identified subordinates, her theory depends upon the doctrine of *respondeat superior* which, in the §1983 context, does not apply.  *See, e.g. Blyden v. Mancusi*, 186 F.3d 252, 264 (2nd Cir. 1999).  Although Judge Tormey did determine in the spring of 2007 to remove plaintiff from her position as Chief Clerk of the Onondaga Family Court, his action was based upon the findings of an intervening, independent investigation by the IG/UCS.

16

Mr. Voninski is also alleged to have taken part in the watershed "summer 2002" meeting. While Mr. Voninski did subsequently engage plaintiff on various issues such as her time and attendance, and though plaintiff portrays their interactions as contentious and disagreeable, there are no allegations linking Mr. Voninski to a cognizable adverse employment action. Indeed, when Mr. Voninski retired from the OCA in September of 2006, plaintiff still held her title of Chief Clerk of the Onondaga Family Court. Complaint, ¶81.

Mr. William Dowling and Judge Bryan Hedges had no part in plaintiff's "summer 2002" conference with Judge Tormey and Mr. Voninski or in any other transactions arguably involving political speech/activity. Mr. Dowling is alleged to have had a sharp disagreement with the plaintiff on February 10, 2006 over workplace issues which the Complaint leaves undescribed, Complaint, ¶¶51. Various caustic hearsay statements are attributed to him, *id.*, ¶¶52, 84. However, there are no competent allegations linking him to any tangible, cognizable employment actions or demonstrating any unconstitutional motives for his supposed behavior.

The Complaint presents less against Judge Bryan Hedges than against the other defendants. On plaintiff's time line there is no reference to Judge Hedges until sometime after May of 2006. Complaint, ¶¶66-68. Plaintiff seeks to link Judge Hedges into this action by way of scenarios supposed upon "information and belief," Complaint, ¶¶68, 70-73 and unattributed, multi-layered hearsay statements, *e.g. id.*, ¶101. The spurious quality of these allegations speaks for itself; as a matter of law they must be rejected.

**B.     "Protected speech"**

Plaintiff asserts that defendants have violated her First Amendment right to engage in free speech. Complaint, §V, ¶¶123-128. Plaintiff is required to show that (1) she engaged in speech "as a citizen on matters of public concern rather than as an employee on matters of personal

17

interest," *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 235 (2nd Cir. 2002), (2) she suffered an adverse employment action, *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2nd Cir. 2001), and (3) "the speech was at least a substantial or motivating factor in the [adverse employment action]," *Sheppard v. Beerman*, 317 F.3d 351, 355 (2nd Cir. 2003) (*internal quotations and citations omitted*). It may be assumed for current purposes that the plaintiff has experienced an "adverse employment action." However, as to the first and third factors, this action should be dismissed under Rule 12(b)(6).

1.     **"Public concern v. personal interest"**

This inquiry requires a close examination of plaintiff's factual allegations. Nonetheless, it presents a question of law for a court to resolve under Rule 12(b). *Johnson v. Ganim, et al*, 342 F.3d 105, 112 (2nd Cir. 2003); *Morris v. Lindau*, 196 F.3d 102, 110 (2nd Cir. 1999).

Only a small number of plaintiff's alleged events involve "speech" at all. To the extent that the plaintiff describes her own speech activities their context, and their content, make clear that they involved only private, subjective concerns.

•     Complaint, ¶¶39-43; plaintiff alleges that "in or about summer 2002" she met privately in chambers with Judge Tormey and Mr. Voninski. Plaintiff asserts that, at that time, she turned down their request to provide or gather adverse information about Hon. David G. Klim, another Onondaga County Family Court Judge who would be competing in elections in the fall of 2002.[10] Plaintiff declares that she told Judge Tormey and Mr. Voninski that "she did not believe it was her role, as Chief Clerk, to get involved in political races and that she also believed it was a violation

_____

[10] It is not clear that Judge Klim took part, or considered taking part, in a 2002 election. In November of 2005, he was reelected to the Onondaga County Family Court. Information on the November. 2005 election is available at public sources, *e.g.* www.syracuse.com/news/pdf/electable.pdf and www.soulofsyracuse.com/news/election05.htm.

of the Rules of the Chief Judge." *Id*., ¶43.  No further conversations on the subject are described.

• Complaint, ¶¶48, 53; in 2005, approximately three years after plaintiff's alleged *in camera* meeting with Judge Tormey and Mr. Voninski, she recounts sharp verbal disagreements with Mr. Voninski and Mr. Dowling about her compliance with time/attendance and sick leave procedures.

• Complaint, ¶¶59-60; plaintiff describes plaintiff's 2006 conversation with an unnamed official who declined to speak with her about a pending audit of the Onondaga Family Court.

• Complaint, ¶¶75-78; plaintiff recalls a July 31, 2006 interview with Thomas Testo, an Investigator with the New York State Office of the Inspector General, during which plaintiff and her attorney discussed "charges against her."

• Complaint, ¶¶78-79; on August 11, 2006 plaintiff wrote letters to the Inspector General and to a Deputy Chief Administrative Judge detailing her complaints about harassment in retaliation for two illness-related absences from work in 2005.

• Complaint, ¶85; sometime after August 30, 2006, plaintiff wrote to the Inspector General regarding changes in her duties/responsibilities.

• Complaint, ¶87; plaintiff recalls a September/October, 2006 conversation with Mr. Dowling regarding Judge Tormey's concerns about her professional abilities.

• Complaint, ¶92; plaintiff summarizes various undated conversations with Michael Klein, the Executive Assistant to the Administrative Judge of the Fifth Judicial District and other unnamed individuals, in which she was advised to give Mr. Klein time to "smooth things out."

• Complaint, ¶102; on January 17, 2007 plaintiff wrote a letter to OCA executives presenting her personal complaints.  She also claims to have "disclosed the overall dysfunction at the Family court and in the District Office, including instances of misconduct and abuse by senior officials."

• Complaint, ¶103-107; on January 30, 2007 plaintiff met with Mr. Klein, OCA District

19

Executive, and Mr. Sullivan, OCA Assistant Deputy Counsel, to review a report/recommendation recently issued by the Office of the Inspector General (the IG/UCS had begun an investigation sometime around May of 2006, *see id*., ¶¶74-75). Plaintiff again complained that she had been mistreated by "senior court officials." Mr. Klein and Mr. Sullivan advised that the Inspector General had determined that the plaintiff had lost the confidence of court administrators and recommended that she be removed from office. Mr. Klein and Mr. Sullivan offered, and plaintiff accepted, a job as Court Attorney Referee for the Oneida and Oswego County Family Courts.

In assessing whether an employee's speech addresses a matter of public concern, courts consider "the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 161-63 (2nd Cir. 1999). By this inquiry, courts evaluate whether speech at issue relates to a matter "of political, social, or other concern to the community." *Morris v. Lindau*, 196 F.3d 102, 110 (2nd Cir. 1999) (*internal quotation marks omitted*).

A critical aspect of this inquiry is whether speech at issue "was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis*, 165 F.3d at 163-64. Personal, subjective employee grievances do not qualify as matters of public concern. *See, e.g., Connick v. Myers*, 461 U.S. 138, 147-49 (1983); *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2nd Cir. 1991). As a matter of law, the few instances of "speech" alleged by the plaintiff's fall into this category.

Plaintiff's alleged "summer 2002" conversation with Judge Tormey and Mr. Voninski about partisan politics and Rules of the Chief Judge is the wellspring from which the rest of her §1983 complaints flow. If the conversation happened, its content, form and context were unremarkable; a trio of high-ranking, policymaking Court officials had a private and informal conversation about State/local politics. The remainder of plaintiff's alleged "speech" events

consist of discussions with various people about plaintiff's work conditions, conversations about Inspector General activities and self-serving statements by the plaintiff to OCA executives concerning the IG/UCS investigation.

Plaintiff does allege that, on January 17, 2007, she wrote to OCA executives concerning "the overall dysfunction at the Family court and in the District Office, including instances of misconduct and abuse by senior officials."  Complaint, ¶102.  "Misconduct and abuse" could involve an enormous range of conceivable actions.  Whether plaintiff is implying that senior officials were sometimes unfriendly to her, or that senior officials were committing spectacular felonies, the motive, context and form of her January, 2007 communication is dispositive.

Even if internal, interpersonal affairs at the Onondaga County Family Court might have been of interest to the general community, plaintiff had no motive to publicize them; plaintiff's differences with supervisors, work travels, office assignments, relations with subordinates, court audits and her internal discipline were subjects with which she was only personally interested.  If the plaintiff ever had information concerning "misconduct and abuse by senior officials," she showed no interest in brining such matters to the public eye; her only effort to share such information with anyone took place in the context of an investigation by the Inspector General. Her "misconduct and abuse" communication was submitted to an investigator, working under principles of confidentiality, in the form of a missive to counter disciplinary charges which were going to affect her personal employment interests.  As such, as a matter of law, plaintiff did not engage in "protected speech" for purposes of a First Amendment retaliation claim.  *See generally*

21

*Connick v. Myers*, 461 U.S. 138, 147 (1983);[11] *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 143 (2nd Cir. 1993); *Tiltti v. Weiss*, 155 F.3d 596, 602-03 (2nd Cir. 1998); *Bogart v. New York City Law Dept.*, 2001 U.S. Dist. LEXIS 21919, *17-19 (SDNY 12/20/01).

**2.        "Substantial or motivating factor"**

Plaintiff's only alleged instance of arguably "political" speech - her private, unpublicized refusal to cooperate with Judge Tormey and Mr. Voninsky in connection with an upcoming judicial election - is alleged to have occurred in "summer 2002."  Complaint, ¶¶37-43.  Plaintiff goes on to describe a five-year accumulation of workplace grievances, but no actual employment change until January of 2007.[12]  At that time, the IG had concluded an investigation into plaintiff's official misconduct and determined that she should be removed from her position.  In response, Chief Administrative Judge Tormey found the plaintiff another high-ranking position with OCA.

Plaintiff presents no claim that defendants conspired with the Office of the Inspector General.  No representatives of the Inspector General are featured as defendants in this action.  Neither are Mr. Klein and Mr. Sullivan, the officials who effectuated the Inspector General's recommendations and "threatened" plaintiff with an offer of new job.  Complaint, ¶¶104-106.  Plaintiff's claim of retaliation against free speech thus depends upon a theory that, five years after a conversation featuring a political disagreement, the conversation was a substantial or motivating

---

[11] "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Connick*, 461 U.S. at 147.

[12] Plaintiff describes some temporary reassignments to other regional courts in 2006.  Complaint, ¶¶61-68.  Plaintiff asserts that the reassignments were unnecessary and that she was overqualified for them; nonetheless, plaintiff asserts that she brought substantial improvements to the operations of those other courts.  Opportunities to excel are not properly regarded as "adverse employment actions."  *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Bogart*, 2001 U.S. Dist. LEXIS 21919 at *27.

factor in Judge Tormey's discretionary decision to demote, rather than fire, the plaintiff in the wake of an independent finding that she had engaged in official misconduct.  The passage of so much time between alleged catalyzing event/retaliatory act should preclude this claim as a matter of law. *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (examining cases involving 3-4 month periods between protected activity and adverse action).

Plaintiff also posits a five-year course of "harassing events" upon which she concludes that she suffered a retaliation-driven hostile work environment.  This aspect of plaintiff's §1983 claims calls to mind the court's observation in *Alfano v. Costello, et al*, 294 F.3d 365, 377 (2nd Cir. 2002);

> . . . many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.  *See, e.g., Byrnie v. Bd. of Educ.*, 243 F.3d 93, 103 (2nd Cir. 2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments.") (*quoting Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) (*internal quotation marks omitted*)); *see also Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision") (*internal quotation marks omitted*). . . .many personnel decisions can be ascribed to discrimination no matter what the supervisor does.  Thus, it is easy to claim animus whether a supervisor resorts to counseling (if this is seen as a form of discipline) or not (if lack of guidance is deemed to set up an employee for harsher discipline).  Similarly, it is easy to ascribe animus whether an employer prepares a memo after an event of discipline (if the memo is deemed an escalation in severity) or not (if the failure to prepare a memo is deemed a cover-up).

*Id*. at 377-78.  Though *Alfano* involved claims of gender-based discrimination and a hostile work environment under Title VII, the Second Circuit's reasoning still pertains.[13]  By this action the plaintiff seeks to amplify interpersonal conflicts into a civil rights crisis, a manifest abuse of the

---

[13]  Indeed, even if the plaintiff was claiming to have suffered gender-based workplace abuse, her allegations would not nearly describe a cognizable hostile work environment.  *Alfano*, 294 F.3d at 378-340.

District Court.  Federal civil rights laws have not been enacted to establish "a general civility code" for the American workplace.  *See, e.g. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2nd Cir. 2004); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2nd Cir. 2001).  The conflicts which plaintiff describes with Mr. Dowling, a small number of encounters interspersed over several years, are just the sort of matters from which the federal courts resolve to refrain.

**C.      "Political activity"**

The only transaction in the Complaint which might arguably be regarded as a political activity is the "summer 2002" private conference with Judge Tormey and Mr. Voninski alleged in Complaint, ¶¶37-43.  As with plaintiff's "speech" claim discussed above, no cognizable §1983 cause of action may be based thereupon.

**D.      Insufficiency of factual allegations**

A great deal of plaintiff's Complaint consists of the sort of baseless, spurious calumny which the federal courts refuse to tolerate.  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of litany of general conclusions that shock but have no meaning."  *Barr v. Abrams, et al*, 810 F.2d 358 (2nd Cir. 1987).  Conclusory allegations, or legal conclusions masquerading as factual conclusions, will not withstand review under Rule 12(b).  *In re Mastercard Int'l, Inc.*, 313 F.3d 257, 261 (5th Cir. 2000).  *See also Arteta v. County of Orange, et al*, 141 Fed. Appx. 3, 6 (2nd Cir. 2005); *Bickerstaff v. Vassar College*, 196 F.3d 435, 451-452 (2nd Cir. 1999); *Posr v. Court Officer Shield #207, et al*, 180 F.3d 409, 419 (2nd Cir. 1999); *Wallmar-Rodriguez v. Felix Roma Bakery*, 2007 U.S. Dist. LEXIS 34001, *21 (NDNY 5/9/07); *Miller v. County of Nassau, et al*, 467 F Supp.2d 308, 320 (EDNY 2006); *Gaboury v. Town of Roxbury, et al*, 1999 U.S. Dist. LEXIS 5810

(NDNY 4/19/99);  *Johnson v. Goord, et al*, 290 AD2d 844 (3rd Dept. 2002).

Most of plaintiff's core allegations consist of arrant speculations submitted "upon information and belief."  *E.g.* Complaint, ¶57 (imagining that Mr. Voninski surreptitiously gained access to plaintiff's email); *id*., ¶70 (supposing that defendants and "others within their sphere of influence" pressured/rewarded courthouse employees for negative information about plaintiff); *id*., ¶117 (declaring that hostile environment and retaliatory actions were taken by defendants to harass, humiliate, intimidate and control plaintiff).  Even under the liberal pleading requirements of the Federal Rules of Civil Procedure, "information and belief" gives no license for such purulence.  As the Second Circuit observed in *Gaboury*, 1999 U.S. Dist. LEXIS 5810 (NDNY 4/19/99), "Fed. R. Civ. P. 8 places an obligation upon [plaintiff's counsel] to submit "a short and plain statement of the claim," not a 103 page, 669 paragraph long conspiracy theory novel."  *Id*. at *13, n.5, *citing Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).

## CONCLUSION

For the reasons discussed above the defendants respectfully submit that plaintiff's action should be dismissed under Rules 12(b)(1), 12(h)(3) and 12(b)(6).

Dated:  Albany, New York
           July 19, 2007

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY  12224


 s/Charles J. Quackenbush
Charles J. Quackenbush
Assistant Attorney General, Of Counsel
BRN 601683
(518) 402-2270
charles.quackenbush@oag.state.ny.us

TO:    William D. Frumkin, Esq.
           BRN 104734
           Attorney for Plaintiff
           399 Knollwood Road, suite 310
           White Plains, NY 10603