UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
****************************************************
BOBETTE J. MORIN,

                            Plaintiff,

  vs.                         07-CV-517

HONORABLE JAMES C. TORMEY, ET AL.,

                            Defendants.

****************************************************

Transcript of a Motion held on October 11, 2007, before the HONORABLE DAVID N. HURD, at the United States Federal Courthouse, 10 Broad Street, Utica, New York, before Nancy L. Freddoso, Registered Professional Reporter and Notary Public in and for the State of New York.

NANCY L. FREDDOSO, R.P.R.
Official United States Court Reporter
10 Broad Street, Room 316
Utica, New York 13501
(315) 793-8114

2

A P P E A R A N C E S

1

2   For Plaintiff:

3                        SAPIR & FRUMKIN LLP
                         ATTORNEYS AT LAW
4                        399 KNOLLWOOD ROAD
                         SUITE 310
5                        WHITE PLAINS, NEW YORK 10603
                    BY:  DANIEL T. DRIESEN, ESQUIRE
6

7

8

9

10

11

12   For Defendant:

13
                         STATE OF NEW YORK
14                       OFFICE OF THE ATTORNEY GENERAL
                         THE CAPITOL
15                       ALBANY, NEW YORK  12224-0341
                    BY:  CHARLES J. QUACKENBUSH, AAG
16

17

18

19

20

21

22

23

24

25

3

```
 1                    (WHEREUPON, the proceedings held on
 2                    October 11, 2007, were commenced.)
 3
 4                    COURT CLERK:  Bobette Morin versus
 5      Honorable James Tormey, et al.  2007-CV-517.
 6                    Counselors, your appearance for the
 7      record, please.
 8                    MR. DRIESEN:  Daniel Driesen for the
 9      plaintiff.  Good morning, your Honor.
10                    MR. QUACKENBUSH:  Charles Quackenbush from
11      the Office of the New York State Attorney General on behalf
12      of the Office of Court Administration.  Good morning, your
13      Honor.
14                    THE COURT:  Good morning.
15                    Mr. Quackenbush, I guess we are down to,
16      at this stage of the proceedings, why the individual
17      defendants should not continue to be in this lawsuit.  So
18      you can tell me why you think they should at this stage
19      where we are just at the pleading stage.
20                    MR. QUACKENBUSH:  Yes, your Honor.  Even
21      at the pleading stage, it is proper for the Court to
22      consider matters of jurisdiction.  Sovereign immunity under
23      the Eleventh Amendment is obviously an essential
24      jurisdictional issue, even though the plaintiff --
25                    THE COURT:  For individual defendants,
```

1   sovereign immunity?  That's a unique proposition, isn't it?

2                    MR. QUACKENBUSH:  No, it is not.  In our

3   papers, I emphasized Judge McAvoy's position in the

4   McGregor case.  In many cases --

5                    THE COURT:  Did he dismiss that case at

6   the pleading stage?  That's where we are now, pleading

7   stage.

8                    MR. QUACKENBUSH:  Yes.  I hesitate to

9   answer that.  I am not sure of the answer.

10                    THE COURT:  I don't think he did.

11                    MR. QUACKENBUSH:  Okay.  The principles

12   that he enforced in that case come to bear here.  The fact

13   that the individual defendants are nominally before you --

14                    THE COURT:  What do you mean nominally?

15   They are before me on a complaint that has about one

16   hundred and forty-some paragraphs of detailed acts by these

17   four defendants.  Whether they are true or not, I must

18   assume them all to be true at this point.

19                    MR. QUACKENBUSH:  Well, the complaint is

20   admittedly vast.  However, as I have emphasized in our

21   submissions, there is very little in that massive

22   allegations which attributes particular conduct to

23   individual defendants.

24                    The substance of this matter has to

25   prevail over the fact that they are listed as individual

5

1    capacity people.  Every action which is discernible from
2    the complaint by each of these defendants was taken in the
3    course of their professional duties, in the context of
4    their work, in the context of the plaintiff's work.
5                    The fact of the matter is that every
6    moment which the plaintiff alleges one of these defendants
7    did anything, they were doing it in the course of their
8    official duties.
9                    Moreover, the plaintiff seeks remedies --
10                   THE COURT:  But all the time we have
11   defendants who are employed by municipalities and they are
12   police officers and doing things as part of their thing,
13   but they are still individually liable.  That doesn't
14   immune them from liability just because they are acting as
15   police officers or acting as court administer or whatever.
16   I mean that's not the law, is it?
17                   MR. QUACKENBUSH:  It can be.  In each
18   particular case, the Court has to examine the substance of
19   allegations against them.
20                   THE COURT:  That might be more appropriate
21   for a summary judgment motion after the plaintiff has had
22   some discovery.
23                   Here, the allegations are, we have got one
24   hundred and forty-two paragraphs of allegations here, and
25   you are saying that as a matter of law, the complaint

```
 1   should be dismissed, and quite -- what is your best
 2   argument for that?
 3                   MR. QUACKENBUSH:  Well, I spent the past
 4   few minutes talking about sovereign immunity.  I will rest
 5   on our writing on that and move on.
 6                   Setting that issue aside, first, there
 7   is -- there are insufficient allegations of personal
 8   involvement.  We have both observed that the complaint is
 9   presented in massive fashion.
10                   However, quality has to prevail over
11   quantity, and after you have sifted and dissected through
12   the allegations, I urge you to agree with me that there is
13   so little alleged against each of these individual
14   defendants that, even under Rule 12(b), the action should
15   not be permitted to proceed.
16                   THE COURT:  Is it the quantity that's
17   allocated, rather than the quality?  In other words, if you
18   only allege one wrongdoing, that's not enough.  You have to
19   allege a dozen wrongdoings in order to get by the pleading
20   stage?
21                   MR. QUACKENBUSH:  Well, the plaintiff's
22   complaint of retaliation is based on a notion of hostile
23   work environment, and as you know from employment
24   discrimination cases, a hostile work environment can take
25   the form of a lost course of identified harassing incidents
```

1   or it can take the form of a small number of extraordinary

2   toxic and powerful incidents.

3                  Here we have neither.  Here, we have a

4   private conference in chambers in the summer of 2002 with

5   an Administrative Judge.  The plaintiff at that time, and

6   for several years thereafter until January of 2007, she was

7   the highest ranking clerical employee there.  She

8   essentially answered directly to the Administrative Judge.

9                  She was a direct class management

10  confidential employee taking part at a private meeting in

11  chambers with her boss.  She alleges that she discussed

12  some upcoming political matters with Judge Tormey and with

13  Mr. Voninski, the executive assistant.

14                  She alleges that they had a disagreement

15  about these political matters.  They went their separate

16  ways, and she harbored some bad feelings about that

17  meeting, and then the record as of henceforth is empty.

18  You don't have any significant harassment or hostile work

19  events featuring named individuals, featuring dates,

20  featuring contacts, until the spring of 2005.

21                  In the spring of 2005, the complaint

22  begins to be drawn into sharper focus.  At that point, the

23  plaintiff claims that she took her first personal medical

24  leave and, in the original version of her complaint,

25  harassing events accelerated therefrom.

1          Well, as you know, the FMLA claims
2    originally presented in the case are out.  Any retaliation
3    or harassment based upon the plaintiff's taking personal
4    medical leave are immaterial to this action.
5          The only cognizable source of harassing
6    actions has to be the summer of 2002 conference with
7    Judge Tormey and Mr. Voninski.  And when you closely study
8    the timeline presented by the plaintiff from the summer of
9    2002 to the spring of 2005, you will realize it is entirely
10   vacant.
11         In the aftermath of the plaintiff's first
12   medical leave in the spring of 2002, she describes some
13   unpleasant encounters with Mr. Voninski and with
14   Mr. Dowling.  She describes no encounters with -- that I
15   can recall, with Judge Hedges at all.
16         And so I believe that when you view things
17   through that lens, you will appreciate that there is no
18   alleged individual personal conduct upon which she can base
19   a claim that she has been retaliated against for protected
20   activity.
21         As for her activity, itself, Ms. -- the
22   plaintiff offers three prongs.  She contends that her
23   protected activity consisted of political speech or
24   political conduct or in their motion response, they have
25   added a theory that she suffered an injury to her rights of

9

1    association.  All three of those types of matters would be
2    examined under the same basic analysis under the Connick
3    decision which I have discussed in our papers.  So I will
4    treat them in unified fashion.
5                    I have tried to, as well as I could in our
6    papers, dissect through the plaintiff's allegations and
7    pull out any allegation of a speech event.  Any allegation
8    in which she describes that there was a conversation or
9    verbal conduct or any significant activity with an
10   identified person, are pulled out in her papers and
11   examined.
12                   There is not a single incident of a
13   conversation or communication concerning public matters.
14   Every single conversation that the plaintiff describes
15   having, every letter she describes issuing, for instance,
16   to the Inspector General, they concern her private,
17   personal interests.
18                   In the late 2006 or sometime in 2006, the
19   plaintiff realized that the office of the Inspector General
20   for the Unified Court System was conducting its independent
21   investigation into her behavior in the workplace.
22                   The plaintiff on at least two occasions,
23   perhaps three, communicated with the Inspector General's
24   office to air her side of the story to contribute her point
25   of view to the investigation.  These were her private,

1   personal concerns which, she rightly recognized, could have
2   an effect on her own employment situation.
3                    For those reasons, in that context, in
4   that form, the plaintiff spoke up to a limited audience,
5   the Inspector General, who I emphasize is working under
6   principles of confidentiality.  She expressed her
7   complaints and concerns about the operation of the court
8   system at that time in late 2006.
9                    We have to keep looking back in time to
10  the wellspring from which her First Amendment claims
11  supposedly flows.  The source of that First Amendment claim
12  is a private conversation in the summer of 2002 in
13  Judge Tormey's chambers.
14                    There is no allegation that Judge Tormey
15  or Mr. Voninski publicized Ms. Morin's political views.
16  There is no allegation that Ms. Morin went out to any
17  public forum or gave any speeches to any sort of
18  politically interested gathering about this matter.
19                    Ms. Morin was the number one
20  administrative employee in Judge Tormey's court system.
21  They had an exchange in which the plaintiff alleges they
22  disagreed about politics, and that the Second Circuit has
23  emphatically discussed in the Alfano decision.  The Court
24  is presented with an invitation to step in as some sort of
25  super personnel conflict resolution here.

1          The most that Ms. Morin presents is a

2   personality conflict with a senior supervisor which

3   ultimately led to a change of her employment conditions,

4   which, even that, is completely untenable.

5          In our papers in our original motion to

6   dismiss, we pointed out that her changing employment, the

7   elimination of her prior job, her reassignment to a new

8   job, was caused by the intervening events of the Inspector

9   General's office only after the Inspector General issued

10  its recommendation.

11          THE COURT:  Is that alleged in the

12  complaint?

13          MR. QUACKENBUSH:  Yes.

14          THE COURT:  I mean, is that what she

15  alleges, that there was an intervening event or is that

16  your interpretation of it?

17          MR. QUACKENBUSH:  That's my interpretation

18  clearly.

19          THE COURT:  Well, that is not quite

20  appropriate in a motion to dismiss, is it?

21          MR. QUACKENBUSH:  Well, the

22  circumstances --

23          THE COURT:  I thought we were taking the

24  complaint as true in this motion, correct?

25          MR. QUACKENBUSH:  Yes.

1                    THE COURT:  So you are putting -- you want

2    to put on some of your interpretations, do you not, of what

3    the complaint says in order to have it dismissed as a

4    matter of law, and that would be improper, don't you agree?

5                    MR. QUACKENBUSH:  Your Honor, all I seek

6    to do is to offer my fair reading of the complaint, the

7    fair --

8                    THE COURT:  Well, that's one way of

9    putting it, but it is your interpretation of the complaint,

10   is what you want to, and I am sure that that's not my job

11   to interpret the complaint, is to take it as true, and

12   assuming the facts in the complaint to be true, whether it

13   allows the plaintiff to go forward or whether, as a matter

14   of law, it should be dismissed.  But you are going beyond

15   the complaint now, are you not?

16                   MR. QUACKENBUSH:  I don't believe so.  I

17   believe that it is our job to read the complaint to some

18   extent literally.  Of course, there are sections of the

19   complaint that we cannot take literally as I have

20   emphasized.  The enormous majority of the complaint is

21   submitted in inappropriate fashion with no identifiable

22   actors, no identifiable dates, no identifiable context,

23   dozens upon dozens of speculative allegations and

24   inappropriate allegations based upon information and

25   believe.

1                    The huge majority of this complaint

2    provides no fair notice upon which a defendant can defend

3    against the claims.

4                    THE COURT:  You are saying -- you are

5    telling me that this complaint of one hundred and fifty-two

6    paragraphs, you have no notice of what she is claiming at

7    this point.  Is that what you are arguing?

8                    MR. QUACKENBUSH:  I am saying that when --

9                    THE COURT:  You don't have notice of what

10   this is all about?

11                   MR. QUACKENBUSH:  We have notice of what

12   the large story is, but when the plaintiff complains that

13   there are paragraphs which state that an ongoing course of

14   harassing conduct ensued, well, the complaint never

15   specifies what those events were, who the people were that

16   were involved.

17                   If the claim that's before the Court is

18   that of a hostile work environment, the plaintiff is

19   obliged to present appropriate allegations with which to

20   substantiate it.

21                   Now, of course, under federal rules, she

22   doesn't have to present a six hundred paragraph tome, but

23   she does have to give the Court and the defense a clear

24   reckoning of what they are looking at, and an unacceptable

25   majority of her allegations are in unacceptable form.

```
 1                 You have emphasized or you pointed out
 2    that under Rule 12(b), we do have obligation to regard the
 3    plaintiff's allegations as true.  I agree, of course,
 4    that's the standard, but they have to be appropriate
 5    allegations in the first place, and far too many of them in
 6    this action are not appropriate.
 7                 As for -- well --
 8                 THE COURT:  So if we eliminate all the
 9    non-appropriate, we still have a great deal of factual
10    allegations here, do we not, that would put you and your
11    clients on notice as to what the claim here is all about,
12    do we not?
13                 MR. QUACKENBUSH:  Yes, and to the best
14    that we have been able, we have addressed them.
15                 THE COURT:  So that means the complaint is
16    sufficient in that regard, and we should move forward,
17    isn't that true?
18                 MR. QUACKENBUSH:  No, no, your Honor.
19                 THE COURT:  Well, Mr. Quackenbush, I have
20    heard enough.  Let's move on.
21                 Mr. Driesen, you may be heard.
22                 MR. DRIESEN:  Thank you, your Honor.
23                 As your Honor alluded to throughout
24    Mr. Quackenbush's recitation, the pleading threshold for a
25    complaint in federal court under Rule 8(a)(2) is a low
```

1   threshold.  She doesn't have to put defendants on notice.

2   She far excelled that threshold and cleared that bar

3   throughout, as you noted, one hundred and forty-plus

4   paragraphs of a complaint.

5                   I dispute quite clearly the type of attack

6   that is being made on this complaint because it is more

7   akin to a summary judgment.

8                   THE COURT:  Well, you made some

9   allegations in your complaint that you now agree are not

10  appropriate, correct?

11                  MR. DRIESEN:  Well, I will get to --

12                  THE COURT:  Well, you haven't -- about the

13  defendants being in their official capacity.

14                  MR. DRIESEN:  Correct.

15                  THE COURT:  So you made that allegation in

16  the complaint that it was unnecessary.  You also made some

17  allegations under the Family Medical Leave Act that were

18  inappropriate, and you admit that they should be dismissed.

19                  MR. DRIESEN:  Correct, your Honor.  We

20  have abandoned parts of the complaint, but the individual

21  defendants and the issues that pertain to them directly are

22  sufficiently pled in the complaint, and the citations that

23  try to dismiss the complaint against them are largely

24  citations for summary judgment cases.

25                  Referable to the Alfano case cited by

1   counsel today, it is interesting because the Alfano

2   decision that was cited wasn't even a summary judgment

3   decision.  It was a Rule 50(a) post-trial motion that was

4   granted.

5               Alfano survived a motion to dismiss, as we

6   should.  We should have the opportunity to present the

7   evidence.  You know, on the one hand, we are being told

8   that there is -- our complaint is voluminous and is too

9   long, and on the other hand, we are being told we haven't

10  pled enough information.  That's just simply -- they are

11  contradictory, and they are opposite.

12              There is sufficient information being pled

13  in here, and the issues that arose are being characterized

14  by the defendants in a way that is inappropriate for a

15  motion to dismiss.

16              They refer to a meeting in the summer of

17  2002 as an interpersonal conflict.  They refer to

18  Ms. Morin's demotion or retaliatory transfer from the

19  highest level of a judicial grade thirty-two position to a

20  grade twelve file clerk's position one hundred miles from

21  her home as an opportunity to exceed.  That is an unfair

22  inference that can be drawn, and certainly cannot be drawn

23  from the complaint as it is pled.

24              The complaint is sufficient.  Citing to

25  McGregor as inapposite because that is a FMLA claim, FMLA

1    case, a 1983 individual liability claim.  And in response

2    to that, we did cite a Supreme Court case, a Second Circuit

3    case that says those types of damages, those types of

4    claims can succeed under 1983.

5                        With respect to the personal involvement

6    of the individual defendants, our papers, I think pages

7    nine, ten, and eleven, detail and cite the individual

8    defendants, cites to paragraphs in the complaint that

9    refers to direct action by these individuals that meet the

10   sufficient four-point standard to show personal involvement

11   that they directly participated in this action; that they

12   failed to remedy their wrongdoing that they created; and

13   allowed unconstitutional policies and customs to proceed,

14   and other grossly negligent actions, and for each of the

15   defendants that were individually named, we cited

16   paragraphs in the complaint that addressed those things.

17                       In addition, the allegation that, upon

18   information and belief, the pleading was insufficient or

19   refer to hearsay and characterizing certain allegations as

20   spurious, we are not here to decide hearsay.  I can address

21   that because those were statements that were elicited from

22   the individual defendants.  But this isn't the stage where

23   that question is raised and answered.

24                       The allegations upon information and

25   belief, as we have indicated in our opposition papers, were

1    statements that were relayed directly to Ms. Morin from

2    people who were present at the time.  That's more than

3    sufficient.  She doesn't have to be the personal observer

4    of every fact, and discovery is meant to elicit that

5    information to provide an opportunity at that point to

6    determine if those allegations are sufficient or if they

7    are faulty.

8                    But we are -- her claim and her

9    allegations are more than satisfactory of Rule 8(a)(2), and

10   the motions under Rule 12(b) are not sufficient to overcome

11   that.

12                   THE COURT:  Thank you.

13                   The following are facts as alleged by

14   plaintiff Bobette Morin which must be assumed to be true on

15   this motion to dismiss.  See Conley versus Gibson, 355 U.S.

16   41, 45-46 (1957).

17                   She has been employed by the New York

18   State Office of Court Administration since 1983.  She

19   served as Deputy Chief Clerk of the Onondaga County Family

20   Court from 1986 to 1994.  In 1994, she was appointed Chief

21   Clerk of the Onondaga Family Court.  She has received many

22   accolades and honors commending her work as Chief Clerk.

23                   Defendant James C. Tormey became District

24   Administrative Judge of the Fifth Judicial District in

25   2000.  He subsequently replaced the incumbent Executive

1   Assistant with his former law clerk, defendant

2   John R. Voninski.

3               In or about the summer of 2002, Tormey and

4   Voninski spoke with plaintiff about upcoming judicial

5   elections.  They repeatedly tried to elicit information and

6   negative opinions about a political rival and attempted to

7   convince plaintiff to obtain additional negative

8   information about the rival.

9               Plaintiff refused to do so and stated that

10   in her role as Chief Clerk, she should not become involved

11   in political races and that doing so may be a violation of

12   the rules of the Chief Judge.

13               From that day forward, plaintiff alleges

14   she was subjected to a continuously hostile work

15   environment by defendants in retaliation for her refusal to

16   participate in the political activity as defendants wanted,

17   and for complaining about the political activities of

18   defendants.

19               In moving to dismiss, defendants argue

20   that sovereign immunity bars plaintiff's Section 1983 and

21   Family Medical Leave Act claims.  She has not responded

22   except as to claims against the defendants in their

23   individual capacities brought under Section 1983.

24   Accordingly, all FMLA claims will be dismissed.

25               Further, the Section 1983 claims against

1  New York State, the OCA, and the Unified Court System, as

2  well as the official capacity claims against the

3  individuals will be dismissed.

4            However, sovereign immunity does not

5  protect the defendants against Section 1983 claims brought

6  against them in their individual capacities, and those

7  claims will not be dismissed on Eleventh Amendment grounds.

8  See Huminski versus Corsones, 396 F.3d 53, 70 (Second

9  Circuit 2005).

10           Defendants argue that plaintiff fails to

11  state a claim for First Amendment retaliation in that there

12  are insufficient factual allegations to provide notice of

13  the claims, the speech was not protected, she does not

14  allege personal involvement by the defendants, and if there

15  was protected speech, there was no causal connection

16  between any protected activity and the adverse employment

17  actions.

18           In reply, defendants also argue that the

19  claims are barred by statute of limitations.

20           The one hundred and forty-two paragraph

21  complaint is replete with factual allegations sufficient to

22  put defendants on notice as to the claims against them.

23  The complaint will not be dismissed on this ground.  See

24  Federal Rules Civil Procedure 8.

25           The complaint alleges that defendants'

1   retaliation began with her refusal to accommodate their

2   requests to "dig up dirt," so to speak, about political

3   rivals.  In essence, this claim is that she was retaliated

4   against, beginning in 2002 and continuing until her

5   demotion and transfer in March 2007, for refusing to

6   participate in certain political activity with defendants.

7              There is no doubt that this is protected

8   activity.  Plaintiff also alleges that beginning in 2006

9   she began a speak out about the retaliation and what she

10  considered to be improper, even corrupt, activities and

11  interferences with her position as Chief Clerk.

12             Improper political activities and

13  politically-motivated interference with a high-level state

14  employee such as Chief Clerk are matters of public concern.

15  This is also a protected activity.

16             Plaintiff makes allegations of personal

17  involvement as to each defendant.  For example, she alleges

18  that Voninski required her to call him from an office

19  telephone upon her arrival and departure from the workplace

20  as a harassment to which others were not subjected.

21             Voninski reassigned plaintiff to Lewis

22  County Family Court in Lowville, one hundred miles from her

23  home.  He also reassigned her to Rome upon completion of

24  the temporary assignment in Lowville.

25             In February 2006, defendant

1   William F. Dowling threatened plaintiff's position and told
2   her that she had angered the wrong people and that she
3   would be sorry she crossed his path and that he would go
4   directly to Voninski and Tormey, who already wanted to get
5   rid of her.
6                    Plaintiff further alleges in the course of
7   the investigation by the Unified Court System Inspector
8   General's office that she informed the inspector of
9   retaliation that was occurring and her fear that it would
10  continue.  She contends that all defendants solicited
11  negative information about her from other employees, and in
12  one case rewarded an employee with a favorable transfer for
13  doing so.
14                    Further, upon her return to regular Chief
15  Clerk duties in Syracuse, Dowling threatened her position
16  again, and both Dowling and Hedges removed some of her
17  duties and responsibilities.  These actions escalated and
18  culminated with her demotion from Chief Clerk to Court
19  Attorney Referee in Oswego and Rome, resulting in lower pay
20  and benefits.
21                    These examples just scratch the surface of
22  the allegations against the four individuals defendants,
23  demonstrating that plaintiff has sufficiently alleged
24  personal involvement by each of them in retaliation against
25  her.

1          Additionally, plaintiff alleges that these

2    acts began as retaliation for refusal to participate in the

3    defendants' political activities as early as 2002, and

4    continuing to March 2007 because she complained about their

5    improper activities and retaliation.

6          She has alleged sufficient facts of a

7    causal connection between her protected activity and the

8    retaliatory adverse employment action.  In short, if she

9    proves these facts, and a discriminatory motive, it would

10   entitle her to relief.  See Conley, 355 U.S. at 45-46.  She

11   has stated a claim for First Amendment retaliation.

12         Defendants argue in reply that plaintiff's

13   claims accrued before May 15, 2004, and are therefore

14   barred by the three-year statute of limitations.  It is

15   doubtful that this argument should even be addressed

16   because it was not set forth in the original moving papers.

17         However, according to the allegations of

18   the complaint, the hostile work environment due to

19   retaliation was continuously ongoing since 2002, and the

20   adverse employment actions of demotion and transfer

21   occurred within the three-year limitations period.

22   Accordingly, this argument has no merit.

23         Based upon the foregoing, the defendants'

24   motion to dismiss the FMLA claims; Section 1983 claims

25   against New York State, the OCA, and the Unified Court

1   System; and the official capacity claims against the

2   individuals is granted.

3                  Defendants' motion to dismiss plaintiff's

4   Section 1983 claims against the defendants in their

5   individual capacities is denied.

6                     This is the decision of the Court.

7                     Defendants shall file and serve an answer

8   to the remaining claims on or before October 15, 2007.

9   This is the decision of the Court.  No written decision

10  will follow.  A summary order will be filed.

11                  Anything further, counselors?

12                  MR. DRIESEN:  No, your Honor.

13                  MR. QUACKENBUSH:  Well, your Honor, we

14  respectfully request additional time for our answer.

15                  THE COURT:  Request is denied.

16                  Mr. Minor.

17                  COURT CLERK:  Court stands in recess.

18

19                  (WHEREUPON, the proceedings held on

20                  October 11, 2007, were ended.)

21

22

23

24

25

25

C E R T I F I C A T E

1

2          I, NANCY L. FREDDOSO, RPR, Official Court Reporter

3     in and for the United States District Court, Northern

4     District of New York, do hereby certify that I recorded

5     stenographically the foregoing at the time and place

6     mentioned; that I caused the same to be transcribed; and

7     that the foregoing is a true and correct transcript thereof

8     to the best of my knowledge, ability, and belief.

9

10         I further certify that I am not an attorney or

11    counsel of any parties, not a relative or employee of any

12    attorney or counsel connected with the action, nor

13    financially interested in the action.

14

15         WITNESS, my hand and seal in the County of Herkimer,

16    State of New York.

17

18         _____
                    NANCY L. FREDDOSO
19           Registered Professional Reporter

20

21    My Commission expires March 30, 2011

22

23

24

25