UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BOBETTE J. MORIN,

                                     *Plaintiff*,

      -against-

HON. JAMES C. TORMEY, Individually, HON. BRYAN R.
HEDGES, Individually, JOHN R. VONINSKI, Individually, and
WILLIAM F. DOWLING, Individually,

                                     *Defendants*.

**DEFENDANTS'
MEMORANDUM**

5:07-CV-0517
(DNH)(GJD)

# DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR RECONSIDERATION

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

Charles J. Quackenbush
Assistant Attorney General, Of Counsel
BRN 601683
(518) 402-2270
charles.quackenbush@oag.state.ny.us

**Table of Contents**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1997 EEO/UCS Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      2006 IG/UCS Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument
      THE CONFIDENTIALITY OF THE 2006 IC/UCS INVESTIGATION
      MUST BE PRESERVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.  Defendants' interests in preserving confidentiality  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      B.  Plaintiff has no genuine, legitimate need for access to informants' identities  . . . . . . . . 8

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Preliminary Statement**

Plaintiff is an attorney, employed by the New York State Unified Court System (UCS).[1] The defendants in this action are the Administrative Judge for the Fifth Judicial District of the State of New York, the Senior Judge of the Onondaga County Family Court, and two UCS executive officials (one former, one current).  Upon defendants' Motion under Fed. R. Civ. P. Rules 12(b)(1), 12(h)(3) and 12(b)(6), the UCS Office of Court Administration and the State of New York have been dismissed as defendants from the action.

Upon the remainder of the action the parties have been engaged in discovery.  Several discovery issues have been presented, examined and ruled upon by United States Magistrate Judge Gustave J. DiBianco.  Upon one specific recent ruling the plaintiff now brings a Motion for Reconsideration to this Court.  The defendants respectfully maintain that Magistrate DiBianco's Decision was fully briefed, thoroughly argued and properly rendered.  Under the deferential "clearly erroneous or contrary to law" standard, it must be sustained.  *See generally Luciente v. IBM*, 262 F.Supp.2d 109 (SDNY 2003).

**Statement of Facts**

A central feature of this action is a pair of investigative Reports, issued approximately nine years apart, concerning the plaintiff's misconduct in her workplace.  The first Report was issued April 16, 1997 by the Equal Opportunity Office for the Unified Court System (EEO/UCS).  The second was issued October 12, 2006 by the Office of the Inspector General for the Unified Court System (IG/UCS).[2]

---

[1] The Complaint contains many references to the Office of Court Administration (OCA).  In nearly all instances it is more accurate to refer to the Unified Court System (UCS), of which the OCA is the administrative branch.

[2] The parties' prior submissions, including defendants' materials submitted under seal for *in camera* review, have been forwarded to the District Court by the chambers of the Hon. Gustave J. DiBianco.

**1997 EEO/UCS Report**

In 1997, at the behest of then-District Administrative Judge Joseph Trafficante, Alice M. Chapman, Director of the EEO/UCS directed Martine Arenella to investigate allegations of discrimination raised by fellow UCS employees. Ms. Arenella contacted an extensive roster of UCS personnel including thirty eight Onondaga Family Court staff. Of those thirty eight, five disclaimed relevant information. Other individuals were interviewed with the express understanding that their names would not be disclosed in connection with the investigation. Ms. Arenella found insufficient evidence upon which to base a formal discrimination charge but determined that the plaintiff had created a corrosive work environment in the Onondaga County Family Court. In her Report dated April 16, 1997 she observed;

> [the] evidence presented during the investigation does not support the allegation of discriminatory treatment based on age. However, Ms. Morin's comments regarding older employees were inappropriate. Notwithstanding the allegations of discriminatory treatment based on age, there is credible evidence that Ms. Morin has created an intimidating and harassing work environment for the Onondaga County Family Court. Ms. Morin's interaction with staff is carried out in a manner that is intimidating, demeaning and insensitive. Ms. Morin's explanation that staff shortages are the cause of the pressure on the Onondaga County Family Court staff is not acceptable in light of Frank Jordan, Executive Assistant's assessment that all courts in the district have staff shortage problems.

Arenella Report, p.6.

Plaintiff has been provided with a copy of this Report, redacted to protect identities of individuals who provided information. Issues of counsel's access to the investigative file have not been argued or ruled upon by Magistrate DiBianco.[3] Thus, such issues are not ripe for resolution here and the defense will limit this Response to issues pertaining to the 2006 IC/UCS investigation.

---

[3] Plaintiff's counsel has been advised that Ms. Arenella's investigative file is available for a confidential examination at the OAG, and that Ms. Arenella and Ms. Chapman are available to be deposed.

3

**2006 IG/UCS Report**

In 2006, at the behest of District Administrative Judge Jan Plumadore,[4] IG/UCS Investigator Thomas Testo conducted an independent investigation into plaintiff's activities in her workplace. In connection with his investigation Mr. Testo conducted confidential interviews with a number of 5th Judicial District personnel, most of whom remain in service with the UCS. He found that the plaintiff, by her persistent inter-personal behaviors, had impaired the internal effectiveness of the Onondaga County Family Court and had polarized the personnel in her work environment;

> In closing, the management issues and Ms. Morin's dereliction to the operational and administrative needs of Family Court, combined with the lack of trust in her and her office by District Administrative Judge James Tormey and Supervising Family Court Judge Hugh Gilbert, preclude her from continuing as Chief Clerk of Family Court in Onondaga County. It is recommended that Ms. Morin be removed from her position as Chief Clerk of Onondaga Family Court and be transferred to a position which allows her to utilize her organizational skills while receiving appropriate training in the areas of supervision and personal interaction.[5]

The defendants have provided plaintiff's counsel with a copy of Mr. Testo's Report. It has been redacted to protect the identities of individuals who provided information. As ordered by Judge DiBianco, defendants have also provided plaintiff's counsel with copies of notes taken from witness interviews, likewise redacted. While plaintiff's counsel have not pressed for access to the 1997 Arenella file they have insisted that the identities of individuals who cooperated with Mr. Testo in 2006 be disclosed. The defendants have argued - and Magistrate DiBianco has agreed - that the identities of Mr. Testo's informants must be kept confidential. This Motion has followed.

---

[4] Judge Plumadore is one of several judges serving in the top tier of the New York State Unified Court System under Chief Judge Judith Kaye. *See* www.nycourthelp.gov/admindir1_central.html.

[5] Based upon that recommendation the plaintiff was offered new employment as a Court Attorney Referee for Oneida and Oswego Counties by UCS.

4

**Argument**

### THE CONFIDENTIALITY OF THE 2006 IC/UCS INVESTIGATION
### MUST BE PRESERVED

Throughout this litigation the defense has agreed that the plaintiff should have access to the 2006 Report issued by the IG/UCS. However, the defense maintains that the identities of individuals providing information to the IG should remain confidential. The agency's interests in preserving the integrity of its investigation outweigh the plaintiff's ostensible interest in learning the identities of individuals who cooperated with Mr. Testo.

Under Fed. R. Civ. P. Rule 26(c), Magistrate DiBianco has had to determine defendants' application for protective relief by balancing the plaintiff's litigation needs against the countervailing protectible interests asserted by the defense. *See, e.g. Mitchell v. Fishbein, et al*, 227 F.R.D. 239 (SDNY 2005); *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (SDNY 1985) (citing cases). Rule 26(b)(2) provides that a court may limit disclosure if, among other things,

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Id. "Burden" may be examined in terms of the adverse consequences of the disclosure of inherently sensitive material, whether or not the information clearly falls within an established privilege. *Johnson v. Nyack Hosp.*, 169 FRD 550, 561-62 (SDNY 1996).

A court's analysis under Rule 26(c)(2) is not limited to an examination of the potential harm that might result from disclosure. Rather, it requires the court to balance that harm against the requester's need for the material. In the course of balancing competing interests, a court has broad authority to limit or prevent discovery even when materials sought are relevant and within the scope of Rule 26(b). *See Johnson*, 169 F.R.D. at 562.

5

As observed in *Apex Oil*, "[where] a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it. 10 F.R.D. at 496. The defendants have substantiated their protectible interests. Plaintiff, in turn, has failed to demonstrate a legitimate discovery interest with which to override defendants' concerns.

The *Mitchell* decision is particularly apposite. In *Mitchell*, an attorney was pursuing a civil rights action based upon a claim that he had been denied re-certification to a New York County 18-B (assigned counsel) panel for race-based discriminatory reasons. 227 F.R.D. at 242-43. The plaintiff sought discovery into information underlying the Screening Committee's determination. The defendants sought a protective Order precluding plaintiff's access to identities of, and statements by, individuals who had supplied information to the Committee. The court considered an Affirmation from the Hon. Gerald Lebovits, Chair of the Screening Committee. Judge Lebovits attested that attorneys and judges evaluating an applicant's performance

> would offer honest appraisals only upon the understanding that their comments were part of the confidential screening process. This was certainly true in Mr. Mitchell's case. Many of the attorneys and judges I spoke to related grave concerns regarding Mr. Mitchell's competence and ethics. However, they clearly would not have divulged this important information if they believed that it would be made public . . . . To turn [the screening] process into one in which judges and attorneys are asked to publicly comment on the work of colleagues so that all members of the bar and the bench can learn of such comments would not be something in which many attorneys and judges would be willing to participate.

*Id.* at 245. Judge Lebovits had also "personally assured the people with whom [he] spoke that their comments would remain confidential." *Id.*

Indeed, over the past few months the precedential effect of *Mitchell* has increased. By their

6

Protective Motion the defendants have sought to protect the identities of individuals interviewed as well as their investigative statements. However, Magistrate DiBianco has directed the defense to provide copies of those statements (with identifying information redacted). Over the defendants' objection, the Second Circuit's reasoning in *Mitchell* has thus become even more apropos;

> [this] would be a very different case if the defendants refused to disclose the actual comments made by judges and attorneys who evaluated Mitchell's fitness to serve on the Panel. In such an instance, Mitchell would have no way of discerning whether race or his complaints about racial discrimination played a part in the Committee's decision to deny his application for recertification to the Panel. Here, however, the defendants are willing to disclose the comments relied upon by the Committee in reaching its decision concerning Mitchell's application for recertification to the Panel. **It is the substance of these comments - not the identity of the persons who delivered them** - that will provide the most compelling evidence as to whether Mitchell's decertification from the Panel was based on an impermissible motive.

*Mitchell*, 227 F.R.D. at 247 (*emphasis added*).

**A.     Defendants' interests in preserving confidentiality**

The defendants have submitted a Declaration from Investigator Testo under seal for Magistrate DiBianco's *in camera* review. As Mr. Testo has explained, the IG/UCS must maintain access to sources and preserve the integrity of its investigative methods. Toward this end the Inspector General must be able to assure individuals that the investigation is conducted under confidential strictures. As the sole investigator for the agency for most of New York State, Mr. Testo depends upon the trust he has earned among UCS ranks to carry out his job effectively. He has no subpoena power or other means with which to compel individuals to speak with him. His ability to assure confidentiality is essential.

In the course of Mr. Testo's investigation he had to overcome the same natural reluctance of witnesses, and resort to the same sort of persuasion, as Judge Lebovits experienced in *Mitchell*. It is inherently likely that the exposure and dissemination of the identities of UCS personnel who

7

cooperated with Mr. Testo will have a chilling effect on the willingness of these, and other individuals, to speak candidly with Mr. Testo in future investigations. *See United States v. Nixon*, 418 U.S. 683 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process").

As the Court will appreciate from its examinations of the 1997 and 2006 Reports, the preservation of confidentiality will make a great deal of difference to UCS personnel, whether or not they gave information to Mr. Testo. On two occasions, under independent 5th District administrations, the UCS has had to take remedial measures in response to the plaintiff's demeaning mistreatment of fellow employees. It will make no difference whether or not the plaintiff actually uses her new knowledge to the detriment of IG informants. If the plaintiff is allowed one-sided access to confidential information, this will become known in the UCS community, with demoralizing effects. If agency personnel lose faith in the IG's ability to work with them in confidence, they will refuse to provide information in connection with its investigations. If Mr. Testo loses the ability to persuade people to speak with him, he will become unable to do his job. The IG will, in turn, find itself unable to pursue its statewide mandate.

**B.      Plaintiff has no genuine, legitimate need for access to informants' identities**

In the spring of 2006, defendants initiated contact with UCS administrative authorities in higher ranks of the agency chain of command. Judge Plumadore ordered the IG/UCS to commence an independent investigation. Mr. Testo's investigation, and Report, were carried out under the direction of Inspector General Sherrill Spatz.

The October 12, 2006 IG/UCS Report was the basis upon with the Unified Court System resolved to remove the plaintiff from the Onondaga Family Court and offer her new employment.

These decisions were made in a level of the UCS chain of command beyond Judge Tormey and other defendants.  The Hon. Jan Plumadore is the Administrative Judge for Courts Outside New York City, *i.e.*, for nearly all of New York State.  David Sullivan is Judge Plumadore's Chief of Staff.  Lawrence Marks is the Administrative Director of the UCS.  In the fall of 2006, the 5th District Executive was Michael Klein.  These were the people who made the decisions which Judge Tormey was then required to effectuate.

Plaintiff is acutely aware of these circumstances.  She and her attorney took part in extensive meetings and correspondences with the IG and with those administrators.[6]  Judge Tormey and other defendants did not participate in these processes.  The identities of people who provided information to Mr. Testo meant nothing to agency decision makers during the deliberations which led to plaintiff's new employment.  Their identities have no legitimate, litigation-related value to the plaintiff.

As Magistrate DiBianco has already observed, the plaintiff will have the opportunity to challenge the conclusions contained in the IG Report.  Mr. Testo may be examined regarding his conclusions without exploring  the individual sources upon which he formed his conclusions.[7]  Plaintiff may also take the opportunity to examine the reason for the change in her employment; she may pose questions to Judge Plumadore, Mr. Marks, Mr. Sullivan and/or Mr. Klein.  The Order issued by Magistrate DiBianco will cause the plaintiff no impediment in these efforts.

---

[6] Very early in Mr. Testo's investigation, plaintiff learned that it was underway.  The investigation soon began to resemble an adversarial process.  Copies of extensive correspondences from plaintiff's attorney may be found in Mr. Testo's investigative file, which has been forwarded to this Court by Judge DiBianco's chambers.

[7] On May 28, plaintiff's counsel suggested that Mr. Testo's sources might somehow have been improperly influenced.  Counsel's comments consisted of rank speculation and should have no effect upon the Court's analysis.

**CONCLUSION**

The defendants respectfully maintain that Judge DiBianco's Order should be affirmed.

Dated: Albany, New York
August 26, 2008

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY  12224


 s\Charles J. Quackenbush
Charles J. Quackenbush
Assistant Attorney General, Of Counsel
BRN 601683
(518) 402-2270
charles.quackenbush@oag.state.ny.us

TO: William D. Frumkin, Esq.
Sapir, Frumkin Law Firm
399 Knollwood Road
Suite 310
White Plains, NY 10603