UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BOBETTE J. MORIN,

                          Plaintiff,                5:07-cv-517-DNH-GJD

            v.

HON. JAMES C. TORMEY; HON. BRYAN R.
HEDGES; JOHN R. VONINSKI; and
WILLIAM F. DOWLING,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

SAPIR & FRUMKIN LLP           WILLIAM D. FRUMKIN, ESQ.
Attorneys for Plaintiff
399 Knollwood Road, Suite 310
White Plains, New York 10603

NEW YORK STATE ATTORNEY GENERAL    CHARLES J. QUACKENBUSH, ESQ.
Attorneys for Defendant
Division of State Counsel, Litigation Bureau
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff Bobette Morin ("plaintiff") sues the following defendants pursuant to 42

U.S.C. § 1983 for unlawful retaliation and a hostile work environment in violation of her First

Amendment right to free speech: (1) Hon. James C. Tormey, District Administrative Judge for

the Fifth Judicial District; (2) Hon. Bryan R. Hedges, Onondaga County Family Court Judge;

(3) John R. Voninski, former law clerk to defendant Tormey and Executive Assistant for the Fifth Judicial District from 2000-2006; and (4) William F. Dowling, former law clerk to defendant Hedges and Court Attorney Referee for the Onondaga County Family Court. Plaintiff's initial claims arising under the Family Medical Leave Act and all claims asserted against the Office of Court Administration of the Unified Court System, the State of New York, and the individual defendants in their official capacities were dismissed pursuant to a bench decision dated October 11, 2007. See Order, Dkt. No. 31.

Defendants now move for summary judgment of plaintiff's remaining claims pursuant to Federal Rule of Civil Procedure 56.  Plaintiff opposes.  Oral argument was heard on May 29, 2009 in Utica, New York.  Decision was reserved.

## II. BACKGROUND

### A. Facts

The following facts are either undisputed or construed in the light most favorable to plaintiff. See Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).  Plaintiff began her career as a court clerk with the New York State Office of Court Administration ("OCA") in 1983.  She was later appointed Chief Clerk of the Onondaga County Family Court ("OCFC") in 1994 where she remained until her involuntary removal and forced demotion on March 8, 2007.  Prior to her removal, plaintiff had received a number of OCA awards and was nominated by her co-workers in July 2006 for the Unified Court System's Quality Service and Leadership Award.

Defendant Tormey, a Republican, became District Administrative Judge of the Fifth Judicial District in 2000.  He subsequently replaced the incumbent Executive Assistant with

his former law clerk, defendant Voninski.  In or about "the summer of 2002,"[1] defendant

Voninski escorted plaintiff to defendant Tormey's chambers whereupon the three individuals

had a conversation about OCFC Judge David G. Klim.  Judge Klim, a Democrat, was running

as a candidate in the upcoming fall election for State Supreme Court Justice.  According to

plaintiff, defendant Tormey said, among other things, that Judge Klim was running on the

Democratic ticket against "good Republican friends of mine," Pl's. Aff., Dkt. No. 143, ¶ 7, and

that Judge Klim "is a sympathetic candidate and media darling and because of his disability

will get endorsed by the paper, [so it is important to] get information out there to help the

Republican candidates." Id., ¶ 9.  Plaintiff also states that defendant Tormey asked

suggestive questions during the conversation, including whether she "was a good

Republican," id., ¶ 7, and if she "wanted to be a team player." Id.  After plaintiff refused their

requests that she "dish dirt," id., ¶ 8, and monitor Judge Klim's "comings and goings," id., ¶

10-11, defendants Tormey and Voninski became visibly angry and ordered plaintiff to leave

the office immediately. Id., ¶ 12.  Despite her refusal to cooperate with defendants Tormey

and Voninski, Judge Klim lost the election, and he passed away before plaintiff commenced

her lawsuit.

        Shortly after the summer 2002 conversation and until 2006, plaintiff's requests for

resources were routinely denied by defendants Tormey and Voninski.  Such requests

included calls for additional computer equipment and the filling of court staff vacancies.

Plaintiff alleges similar requests were granted for other employees during the same time

period.  In October of 2002, defendant Hedges warned plaintiff that defendant Voninski and

---

[1] Plaintiff does not provide a more specific date for when this conversation occurred.  The conversation in question forms the basis of plaintiff's allegations for why she was retaliated against and is referred to by both parties as the "summer 2002 conversation."

others were attempting to remove her from Chief Clerk and from the OCFC altogether.

Plaintiff alleges defendant Hedges offered the same warnings in December of 2002 and

again in March of 2003 after Florence Walsh was appointed to Deputy Chief Clerk of the

OCFC .

   In 2005, the New York State Legislature enacted a statute calling for the OCFC to

establish a new courtroom, Model Permanency Part 10 ("Part 10").  Despite training the

Court Attorney Referee for the newly established Part 9, plaintiff alleges defendant Dowling

actively tried to prevent her from training staff for Part 10 and otherwise aiding with the

creation of that courtroom.  Plaintiff was later accused of failing to satisfactorily perform her

duties with respect to helping with the establishment of Part 10, including her inability to

obtain a Case Activity Report System Identification Number for defendant Dowling.

   On February 20, 2006, defendant Voninski issued plaintiff a disciplinary

memorandum for using her annual leave hours without obtaining prior approval.  Defendant

Voninski thereafter required plaintiff to call him from her office phone at the beginning and

end of each work day to confirm her arrival and departure time.  Plaintiff alleges no other

Chief Clerk or employees of her Judicial Grade level are required to report their arrival and

departure times.

   On April 17, 2006, defendant Voninski instructed plaintiff that she was being

temporarily re-assigned to Lewis County Family Court in Lowville, New York.  The new

assignment resulted in plaintiff having to travel approximately four hours round-trip each

workday.  Two days after returning from her temporary placement in Lowville, defendant

Voninski instructed plaintiff to begin reporting to the Oneida County Family Court in Rome,

New York.  This assignment resulted in plaintiff having to travel approximately two hours

round-trip each workday.  Employees at both locations have stated they were surprised

plaintiff was re-assigned to their courthouses because her Judicial Grade level is much

higher than what was required.  Additionally, the employee plaintiff replaced at the court in

Lowville, Judy Meekins, stated at her deposition that defendant Voninski suggested to her

that she take time off shortly before plaintiff was re-assigned to that courthouse. Meekins

Dep., Ex. O to Defs.' Mot. for Summ. J., Dkt. No. 129-45, 12: 2-15.

    While on re-assignment, defendants solicited information from plaintiff's co-workers

about plaintiff's workplace conduct.  Defendants thereafter contacted the Inspector General's

Office and requested an investigation of plaintiff's behavior.

    On January 30, 2007, plaintiff was notified that she was recommended for removal

from her position of Chief Clerk based upon the findings of the investigation conducted by the

Inspector General's Office.  As a consolation, plaintiff was offered a lower-salaried position

as Court Attorney Referee.  Plaintiff accepted the demotion and began working as a Court

Attorney Referee in Rome on March 12, 2007.  Plaintiff's complaint was filed May 15, 2007.

    **B.  <u>Plaintiff's Allegations</u>**

    Plaintiff makes collective allegations against all defendants as well as specific

allegations against each individual defendant.  All acts of retaliation or conduct contributing to

a hostile work environment are alleged to have occurred from between the summer 2002

conversation and plaintiff's forced demotion in March of 2007.

    Plaintiff alleges all defendants solicited negative information about plaintiff while

she was on temporary re-assignment to the Lowville and Rome Family Courts beginning in

February of 2006.  Plaintiff also alleges defendants enticed co-workers to come forward with

negative information about her by promoting employees who provided such information, or

alternatively, threatening employees who refused to help discredit plaintiff's job performance. Finally, all defendants are alleged to have acted together to remove plaintiff from her position as Chief Clerk.

Plaintiff's specific allegations against defendant Tormey are limited to his refusal to grant plaintiff's requests for resources needed to perform her job, requesting an investigation of plaintiff's workplace conduct, ordering plaintiff to move into a poorly maintained, uncomfortable office located in the basement of the courthouse, and allowing defendant Dowling to usurp plaintiff's authority to make operational decisions for the OCFC in 2006.

Plaintiff's specific allegations against defendant Voninski are limited to his refusal to grant plaintiff's requests for resources, issuing her a disciplinary memorandum, chastising her in front of her co-workers for using annual leave hours to which she was entitled, requiring her to call him from her office phone on a daily basis to confirm her arrival and departure times, removing her email password, and re-assigning her to courthouses in Lowville and Rome.

Plaintiff specifically alleges defendant Dowling stated to other court employees that she was a "bitch" and indicated that he would urge defendant Tormey to remove her from her position because she was not a "team player."  Plaintiff also alleges that defendant Dowling acted with defendants Tormey and Hedges to usurp plaintiff's decision making authority at the OCFC in September of 2006.  Finally, defendant Dowling is accused to have retaliated against plaintiff by inhibiting her ability to help with the establishment of Part 10 and thereafter criticizing her for failing to perform her obligations as Chief Clerk.

Plaintiff alleges defendant Hedges failed to remedy the unlawful conduct of the other defendants despite being made aware of their actions and that he ordered defendant Dowling to usurp plaintiff's decision-making authority in September of 2006.

## III.  DISCUSSION

### A.  Defendants' Motion for Summary Judgment

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Mandell, 316 F.3d at 377.  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986).  After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

To establish a prima facie claim of retaliation in violation of her First Amendment rights, plaintiff must show: (1) that her speech constituted a protected activity, i.e., that her statements addressed matters of public concern; (2) that she suffered an adverse

employment action; and (3) that her speech was a motivating factor behind defendants'
retaliatory conduct.  See Sing v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008);
Feingold v. New York, 366 F.3d 138, 160 (2d Cir. 2004).

Defendants assert six arguments for why they are entitled to summary judgment.
First, they argue that plaintiff has not presented sufficient evidence to establish that she
engaged in a protected speech activity when she declined defendant Tormey's and
defendant Voninski's request to gather information related to Judge Klim.  Second,
defendants contend there is insufficient evidence that they caused or intended to cause
either a hostile work environment or any supposedly adverse employment actions.  Third,
defendants argue that plaintiff's allegations do not meet the objective threshold level of
pervasiveness needed to establish a claim of a hostile work environment.  Fourth, they
maintain they are entitled to qualified immunity as a matter of law.  Fifth, defendants assert
that the statute of limitations for a § 1983 claim is three years, thereby barring plaintiff's
lawsuit because her claims are based upon a purported conversation which she admits
occurred sometime in the summer of 2002.  Sixth, defendants contend the doctrine of
sovereign immunity under the Eleventh Amendment bars plaintiff's lawsuit.

## 1.  Protected Speech Activity

Defendants first argue that plaintiff did not engage in a protected activity when she
refused to provide information about Judge Klim because she falls within the "policymaker"
exception established in Elrod v. Burns, 427 U.S. 347, 372-73, 96 S. Ct. 2673, 2689 (1976)
and later refined in Branti v. Finkel, 445 U.S. 507, 517-18, 100 S. Ct. 1287, 1294-95 (1980).
Under the policymaker exception, public employers can discharge an employee in the event
the employee's political beliefs interfered with the execution of her duties.  Branti, 445 U.S. at

517, 100 S. Ct. at 1294.  The Court reasoned that, in some cases, a public employee's "First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." Id. (citing Elrod, 427 U.S. at 366, 96 S. Ct. at 2686).  Defendants argue that plaintiff's refusal to provide the requested information about Judge Klim did not constitute protected speech because her cooperation was vital to the effectiveness of the OCFC.

Alternatively, defendants argue plaintiff did not engage in a protected activity because the request for her to provide information about Judge Klim and monitor his handling of his caseload fell within the scope of her employment as Chief Clerk.  Although Elrod and Branti considered the discharge of public employees on account of their political affiliations, the Supreme Court has since considered the issue of whether a public employer may take adverse employment action against an employee on account of the employee's actual statements. See Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006).  In Garcetti, the Court held that public employees are not entitled to First Amendment protection from adverse employment actions if their statements were made pursuant to their official duties. Id. at 421, 126 S. Ct. at 1960.  Defendants therefore argue that plaintiff does not have a First Amendment right in her refusal to comply with a directive that asks her to perform a task within the scope of her official duties as Chief Clerk.

Defendants' final argument with respect to whether plaintiff engaged in a protected activity is that her speech was not related to a matter of public concern. "Whether speech is a matter of public concern is [a] question of law that is determined by the 'content, form and context of a given statement, as revealed by the whole record.'" Singh, 524 F.3d at 372 (quoting Connick v. Myers, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 1690 (1983)).  An

employee's statement will not be considered a matter of public concern unless it relates to a "matter of political, social, or other concern to the community." Singh, 524 F.3d at 372 (quoting Connick, 461 U.S. at 147, 103 S. Ct. at 1690).  Defendants argue plaintiff's refusal to provide information about Judge Klim was not a matter of public concern as her statement was more akin to an expression of her personal preference rather than a statement related to the performance of elected officials.

Turning to the merits of defendants' arguments thus far, each argument will be rejected in light of the applicable legal standard for summary judgment motions.  Viewing the evidence in the light most favorable to the plaintiff, it must be accepted as true that defendants Tormey and Voninski requested her to engage in political espionage for the purpose of damaging Judge Klim's reputation and improving the chances of a Republican candidate defeating Judge Klim in the upcoming State Supreme Court Justice election. Defendants' contrary argument that they merely requested plaintiff to monitor Judge Klim's conduct out of concern for his substantial caseload is irrelevant for purposes of their motion.

Although conclusory allegations are obviously inadequate to overcome a motion for summary judgment, see Smith v. Am. Exp. Co., 853 F.2d 151, 155 (2d Cir. 1988), plaintiff has first-hand knowledge of the events forming the basis of her claim of retaliation because she was one of the three persons privy to the summer 2002 conversation.  Absent a tape-recording of the conversation, plaintiff cannot be expected to produce additional evidence of what was said during the meeting between her and defendants Tormey and Voninski. Rather, her account of what was said at that meeting, as reflected in both her deposition and affidavit, provides adequate evidence to raise an issue of fact for whether defendants Tormey and Voninski asked her to improperly spy on Judge Klim.

Construing this factual issue in favor of the plaintiff, defendants Tormey and Voninski did not request her to engage in activity that fell within the scope of her duties as Chief Clerk.  Instead, under this interpretation of the disputed facts, defendants Tormey and Voninski asked plaintiff to help advance their political interest in a Republican candidate prevailing in the upcoming State Supreme Court Justice election.  Plaintiff's refusal to accommodate such a request therefore constitutes a protected activity because she was at that moment speaking as a citizen; not pursuant to her official duties as Chief Clerk.

It necessarily follows that plaintiff does not fall within the policymaker exception established in Elrod and Branti because her political loyalty to defendant Tormey and Voninski is not an appropriate requirement for the effective performance of her official duties. See Branti, 445 U.S. at 518, 100 S. Ct. at 1295.  The administrative nature of the obligations of the Chief Clerk buffer that employee from the policy considerations that flow from partisan ideologies, and defendants have not submitted any evidence to show otherwise. Accordingly, defendant's policymaker exception argument must fail because plaintiff's political ideology and contrary policy views, if any, would not have inhibited her performance as Chief Clerk.

Finally, viewing the factual ambiguities surrounding the summer 2002 conversation in favor of plaintiff is likewise fatal to defendants' argument that her speech was not related to a matter of public concern.  The Supreme Court has noted that the public has a need to learn of political pressures placed upon public employees because "there is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." Connick, 461 U.S. at 149, 103 S. Ct. at 1691 (citations omitted) ("[W]hether assistant district attorneys are pressured to work in political campaigns is a

matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal."). Therefore, plaintiff has satisfied her burden to show a genuine issue of material fact for whether she engaged in a protected activity.[2]

## 2.  Evidence of a Causal Connection

Defendants next argue there is insufficient evidence of a causal connection between plaintiff's refusal to provide information about Judge Klim and the alleged acts of retaliation and conduct surmounting to a hostile work environment.  Specifically, defendants contend there are no issues of material fact indicating they conspired with one another to retaliate against plaintiff or that they were personally involved in the alleged adverse employment actions.

Defendants' argument fails again in light of the legal standard for their summary judgment motion.  After viewing the factual ambiguities in favor of the plaintiff, including the circumstantial evidence of political nepotism and close inter-personal relationships between the defendants, see Pl's. Statement of Material Facts, Dkt. No. 144, ¶¶ 56-64 (providing additional citations to affidavits and deposition testimony), there is sufficient evidence for a

---

[2] Defendants also briefly argue plaintiff did not engage in a protected speech activity because she never publicized her refusal to spy on Judge Klim beyond the private setting of Judge Tormey's chambers in which the summer 2002 conversation occurred. This argument is rejected in light of Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 99 S. Ct. 693 (1979), whereby the Supreme Court held public employees who communicate privately with their employers as opposed to publicly about their opinions are nonetheless afforded protection under the First Amendment. Id. at 415-15, 99 S. Ct. at 696-97.  Moreover, plaintiff testified at her deposition that she communicated her refusal during the summer 2002 conversation to defendant Hedges in or around November 2004. Pl's. Dep., Ex. G to Defs'. Mot. for Summ J., Dkt. No. 129-26, 8: 20-25, 9: 1-25, 10: 1-10.  Former Executive Assistant and District Executive of the Sixth Judicial District, G. Russell Oechsle, also stated in his affidavit that plaintiff informed him of her refusal to spy on Judge Klim shortly after the summer 2002 conversation occurred. Oechsle Aff., Dkt. No. 137, ¶ 3.  Plaintiff thereby voiced her objections to defendants' request that she spy on Judge Klim outside the private setting of defendant Tormey's chambers.

rational fact finder to conclude that each defendant conspired with one another and was personally involved in the adverse acts taken against plaintiff.  Although defendants argue there is too large a temporal gap between the summer 2002 conversation and many of the alleged acts of retaliation which occurred years later, the deposition of Florence Walsh dictates otherwise.  Ms. Walsh approached defendant Tormey in his chambers in March of 2003 to thank him personally for appointing her Deputy Chief Clerk at the OCFC.  Ms. Walsh testified at her deposition that defendant Tormey directed her to "do what you can to get rid of her," referring to plaintiff.  Walsh Dep., Ex. N to Defs.' Mot. for Summ. J., Dkt. No. 129-43, 55: 12-25, 56: 1-3.  Defendant Voninski's subsequent re-assignment of plaintiff to the Lowville and Rome Family Courts, followed by his and defendant Dowling's interrogation of plaintiff's co-workers while she was away on re-assignment, all provide a basis to infer that they cooperated with one another to ultimately remove plaintiff from her position as Chief Clerk at the OCFC.  Viewed in the light most favorable to the plaintiff, any temporal distance between acts of retaliation occurring several years after the summer 2002 conversation is discounted by the March 2003 conversation between Ms. Walsh and defendant Tormey.

With respect to defendant Hedges, his personal involvement primarily stems from his failure to intervene in the unlawful conduct of his co-defendants.  As evidenced by plaintiff's allegation that defendant Hedges warned her on three separate occasions that defendant Voninski and others were plotting to remove her from Chief Clerk, defendant Hedges was aware of their conduct. More specifically, however, defendant Hedges is alleged to have acted with the other defendants to help usurp plaintiff's authority when he notified all OCFC employees on January 8, 2007 that defendant Dowling was assuming decision-making authority from plaintiff related to all Family Court projects. Preske Aff., Dkt. No. 140, ¶

10.  Apparently this shift in authority was so peculiar it prompted some employees to ask

defendant Hedges if plaintiff and Deputy Chief Clerk Walsh were still working at the OCFC.

Id. at ¶ 11.

Accordingly, plaintiff has raised an issue of fact for whether her protected speech

activity served as a motivating factor for the alleged acts of retaliation and conduct giving rise

to a hostile work environment. Viewed in the light most favorable to her, the factual

ambiguities and inferences raised by plaintiff's supporting evidence would allow a jury to

conclude that each defendant worked together and for the purpose of retaliating against her

because of her refusal to help defeat Judge Klim in the upcoming election.

### 3.  Threshold Level of Hostility for a Hostile Work Environment Claim

Defendants next argue that plaintiff's allegations do not meet the threshold level of

pervasiveness needed to establish that she was subjected to a hostile work environment.  A

plaintiff presents an actionable claim of a hostile work environment "when the work place is

permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or

pervasive to alter the conditions of the victims's employment and create an abusive working

environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)

(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S. Ct. 2399, 2405

(1986)).  If the conduct complained of is not so severe as to create an environment that a

reasonable person would find hostile or abusive, the plaintiff does not have an actionable

claim. Id.  The Supreme Court cautioned however that the alleged unlawful conduct does not

have to be so serious as to cause psychological harm, id. at 21-22, 114 S. Ct. at 370-71, but

rather, the allegations may still give rise to a legitimate claim if they are serious enough to

"detract from employees' job performance, discourage employees from remaining on the job,

or keep them from advancing in their careers." Id. at 22, 114 S. Ct. at 371.  Significantly, the

Court explained that the standard for a hostile work environment "cannot be[ ] a

mathematically precise test" and that all of the circumstances must be considered, including

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." Id. at 22-23, 114 S. Ct. at 371.

Plaintiff makes a number of allegations which occurred only after her refusal to spy

on Judge Klim.  These allegations include: (1) defendants' repeated refusal to accommodate

plaintiff's requests for resources, supplies and personnel needed to perform her job; (2)

attempting to place plaintiff in a basement office with internal plumbing problems and without

heat or air conditioning; (3) requiring plaintiff to call defendant Voninski each day to confirm

her arrival and departure times; (4) calling plaintiff a "bitch" and telling her that other

defendants want to remove her from Chief Clerk; (5) criticizing plaintiff for the inefficiencies in

Part 10 despite precluding her from helping with its creation; (6) re-assigning plaintiff to the

Lowville and Rome Family Courts, thereby forcing her to travel extensive distances to work

each day; (7) enticing plaintiff's co-workers to provide negative information about her while

she was on re-assignment; (8) threatening plaintiff's co-workers who refused to provide

negative information about her while she was on re-assignment; (9) requesting the Inspector

General conduct an audit of plaintiff's workplace conduct; (10) usurping plaintiff's decision-

making authority in front of her staff; and (11) endorsing plaintiff's removal from her position

as Chief Clerk.

Viewing the evidence in the light most favorable to plaintiff, many of her allegations

were sufficiently pervasive to rise to the level of a hostile work environment.  In particular, the

refusal to provide plaintiff with the resources and staff needed to perform her job as Chief Clerk would detract from plaintiff's ability to fulfill her duties.  Perhaps even more significantly, the re-assignments to remote courthouses, the constant solicitation of negative information from her co-workers, and the negative comments she received from some of the defendants could all discourage a reasonable employee from remaining at her job because of an abusive working environment.  Therefore, plaintiff's allegations of hostility on the part of defendants because of her refusal to spy on Judge Klim meet the threshold level of pervasiveness needed to sustain her hostile work environment claim.

### 4.  Qualified Immunity

Even if there are issues of material fact related to plaintiff's claims of retaliation and hostile work environment, defendants argue they are entitled to qualified immunity as a matter of law.  Whether defendants are entitled to qualified immunity entails two considerations.  Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).  The first issue is whether the facts viewed in the light most favorable to plaintiff indicate the violation of one of her constitutional rights.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), overruled on other grounds by, Pearson v. Callahan, 129 S. Ct. 808, 813 (2009)).[3] The second consideration is whether defendants' actions violated a clearly established constitutional right of which reasonable officials would have known.  Jones, 465 F.3d at 55 (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)).

---

[3] While recognizing that the Supreme Court's recent holding in Pearson affords district courts more flexibility for ignoring the first inquiry under Saucier, such flexibility is unnecessary in this context because plaintiff has already presented an issue of fact for whether her First Amendment right was violated.

As with many of defendants' other arguments, their contention that they are entitled to qualified immunity is dependent upon their erroneous construction of the disputed facts. Defendants essentially argue that plaintiff had no constitutional right to speak out against defendant Tormey's and defendant Voninski's request that she provide information about Judge Klim. Their position is based upon their determination that the request for such information fell within the scope of plaintiff's obligations as Chief Clerk of the OCFC. However, viewed in the light most favorable to plaintiff, the summer 2002 conversation consisted of a request for plaintiff to spy on Judge Klim in order to help improve the chances that a Republican candidate defeat him in the upcoming State Supreme Court Justice election. Under the proper construction of the disputed facts, plaintiff's constitutional right to free speech was violated when defendants allegedly retaliated against her for her refusal to aid in their political objectives. Similarly, defendants' argument that it was objectively reasonable for defendants' to take action against plaintiff is equally invalid because they presume that there was no retaliatory motive for defendants' actions, and in any event, defendants fail to address the supposed objective reasonableness of each alleged act of retaliation. See Defs.' Mem. of Law in Supp. of Mot. for Summ. J., Dkt. No. 129-2, 43. Therefore, defendants are not entitled to summary judgment as a matter of law.

### 5.  Statute of Limitations

Defendants alternatively argue that plaintiff's suit is barred by the three-year statute of limitations for claims brought pursuant to § 1983. Defendants contend that plaintiff's suit is untimely because it was commenced on May 15, 2007, but her claims arise from a conversation which undisputably occurred in the summer of 2002.

However, a plaintiff's claims do not accrue until she "knows or has reason to know of the injury which is the basis of [her] action." Veal v. Geraci, 23 F. 3d 722, 724 (2d Cir. 1994) (citations omitted).  Accordingly, plaintiff's claims did not accrue during the moment she exercised her right to free speech by refusing to spy on Judge Klim.  Instead, each of plaintiff's claims accrued when she learned of each separate act of retaliation committed by defendants.  Any other result would frustrate the purpose of retaliation claims brought pursuant to § 1983 as a defendant could simply wait three years before discharging an employee in retaliation for exercising her right to free speech.  Therefore, any allegations of retaliation as a result of plaintiff's refusal to spy on Judge Klim are timely to the extent they are alleged to have occurred after May 15, 2004.  Correspondingly, any allegations of retaliation before May 15, 2004 are time-barred by the applicable statute of limitations.

Plaintiff's hostile work environment claim requires a different analysis under the statute of limitations. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, 122 S. Ct. 2061, 2068 (2002).  In Morgan, the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile work environment takes place within the statutory time period." Id. For the reasons already discussed, plaintiff has raised an issue of fact for whether she was continuously subject to a hostile work environment after she refused to provide negative information about Judge Klim.  Further, several of the acts alleged to contribute to the hostile work environment undisputably occurred between May 15, 2004 and May 15, 2007, including, but not limited to, plaintiff's re-assignments to the Lowville and Rome Family Courts, the internal investigation of plaintiff's workplace conduct, and her removal as Chief

Clerk.  Therefore, all of the alleged acts contributing to plaintiff's hostile work environment are timely under the applicable statute of limitations.

### 6.  <u>Sovereign Immunity</u>

Finally, defendants argue that plaintiff's lawsuit is barred by the doctrine of sovereign immunity.  As indicated in the prior order dismissing several of plaintiff's claims, the doctrine of sovereign immunity bars suits pursuant to § 1983 against state officials in their official capacities. <u>Huminski v. Corsones</u>, 396 F.3d 53, 70 (2d Cir. 2005) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)).  However, sovereign immunity offers no protection to state officials from being sued in their individual capacities. <u>Hafer v. Melo</u>, 502 U.S. 21, 23, 112 S. Ct. 358, 360 (1991) (citation omitted).

The crux of defendants' present argument for why sovereign immunity bars plaintiff's remaining claims is that, according to them, non-party state officials were responsible for plaintiff's removal from the Chief Clerk position, and therefore, any award of damages flowing from that event would have to be paid from the New York State treasury. <u>See</u> Defs.' Mem. of Law, Dkt. No. 129-2, 45.  As already discussed, however, plaintiff has presented evidence raising issues of fact pertaining to defendants' personal involvement in the many adverse employment actions taken against her as well as defendants' alleged retaliatory motivation for such actions.  Whether other state officials not named in plaintiff's lawsuit also contributed to plaintiff's hostile work environment and her eventual removal from Chief Clerk at the OCFC has no bearing on defendants' summary judgment motion and is completely unsupportive of defendants' argument that sovereign immunity insulates them from liability.  Quite plainly, the evidence presented by plaintiff, if accepted as true by the jury,

would allow for liability against the named defendants apart from any involvement of non-party state officials.

## IV.  **CONCLUSION**

Defendants' motion for summary judgment will be denied because plaintiff has presented evidence of genuine issues of material fact relating to each of the elements of her First Amendment retaliation and hostile work environment claims.  The critical defect in defendants' argument is that they construe the most significant factual ambiguity–the true nature of the summer 2002 conversation–in favor of themselves instead of in favor of plaintiff as is required under Federal Rule of Civil Procedure 56.  Assuming for only the purposes of defendants' motion that defendants Tormey and Voninski asked plaintiff to help provide negative information about Judge Klim in an attempt to gain an advantage for Judge Klim's Republican opponents in the upcoming election, defendants' arguments are unpersuasive.

Notwithstanding the legal standard under Rule 56, plaintiff's retaliation claim is barred to the extent she alleges acts of retaliation occurring outside the three-year statute of limitations.  Plaintiff had three years beginning from the date of each individual act of retaliation to commence her lawsuit.  Therefore, any acts of retaliation which occurred prior to May 15, 2004 are barred by the statute of limitations.

In contrast, plaintiff has presented evidence raising an issue of fact for whether she was subjected to continuous abuse eventually rising to the level of a hostile work environment.  Therefore, pursuant to the Supreme Court's ruling in Morgan, none of plaintiff's allegations of abuse contributing to her hostile work environment are time-barred.

Finally, defendants are not entitled to either qualified or sovereign immunity. Viewed in the light most favorable to plaintiff, her supporting evidence indicates that her

constitutional right to free speech was violated when she was retaliated against for refusing to help advance the political interests of defendants Tormey and Voninski.  Further, defendants' arguments for why their subsequent actions were objectively reasonable are unpersuasive because they are dependent upon their interpretation of the summer 2002 conversation as nothing more than a request for plaintiff to monitor Judge Klim's handling of his caseload.  With respect to sovereign immunity, defendants are not insulated from liability because they are sued only in their individual capacities.  The possibility that non-party officials may also be partly responsible for acts of retaliation against plaintiff is irrelevant because plaintiff has raised an issue of fact as to each defendants' personal involvement, and in any event, none of the remaining parties are sued in their official capacities.

Accordingly, it is

ORDERED that

(1) Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is DENIED; and

(2) Plaintiff's unlawful retaliation claims for acts of retaliation prior to May 15, 2004 are DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 3, 2009
       Utica, New York