UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBETTE J. MORIN,

                                 Plaintiff,

    vs.                                                  5:07-CV-517 (DNH/ATB)

HON. JAMES C. TORMEY, et al.,

                                 Defendants.
_____

WILLIAM D. FRUMKIN, ESQ., Attorney for Plaintiff
CHARLES J. QUACKENBUSH, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

      By order dated June 3, 2009, United States District Judge David N. Hurd referred to Magistrate Judge Gustave J. Di Bianco the issue of whether the defendants and/or their counsel violated certain pretrial discovery orders of Judge Di Bianco and, if so, whether sanctions are appropriate. (Dkt. No. 149). The matter was re-assigned to me on January 4, 2010 following Judge Di Bianco's retirement. On February 1, 2010, I conducted a telephone conference with the parties during which this and various other discovery matters were discussed. During that conference, I ordered defense counsel "to file an affidavit and a memorandum of law . . . explaining why you feel you did not violate the orders of Judge DiBianco as discussed in Judge Hurd's referral order and why sanctions should not be imposed upon you under Rule 37(b) of the Federal Rules of Civil Procedure and/or Rule 16(f) for failure to comply with the protective order and related orders of Judge DiBianco." (Transcript of 2/1/10 Conf.,

Dkt. No. 171, at 17). Plaintiff's counsel was directed to file a responsive affidavit/memorandum. (*Id*. at 18). By text order dated April 20, 2010, I directed both parties to submit additional documents and offered them an opportunity for a further hearing/oral argument on the issue of possible discovery sanctions. Neither party requested a hearing. As directed, defendants submitted two missing attachments to a confidential declaration (Dkt. No. 86 (sealed)) previously submitted *in camera*. Plaintiff filed documentation supporting her application for attorney's fees and costs. (Dkt. No. 173).

In connection with this matter, I have reviewed defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order Sanctions (Dkt. No. 170) and supporting declaration of defense counsel (Dkt. No. 170-1); the plaintiff's responsive Memorandum of Law in Support of Sanctions (Dkt. No. 172) and supporting attorney affidavit (Dkt. No. 172-1); the plaintiff's documentation regarding attorney fees and costs incurred (Dkt. No. 173); as well as a variety of prior court filings relating to this issue, which are identified herein. For the reasons stated below, I find that defense counsel violated Judge Di Bianco's discovery orders in this case, and I impose monetary sanctions on the defendants under FED. R. CIV. P. 37(b)(2)(C) and 16(f)(2). I also provide plaintiff with an opportunity to engage in limited further discovery, assuming that defendants' pending, interlocutory appeal does not result in dismissal of this action.

**I.    Facts and Procedural History**

Plaintiff Bobette Morin ("plaintiff"), former Chief Clerk of the Onondaga

County Family Court, filed this civil rights action pursuant to 42 U.S.C. § 1983 against four defendants associated with the New York State Court system.[1] Plaintiff alleges that the defendants retaliated against her and subjected her to a hostile work environment because she exercised her First Amendment rights by refusing the request of two of the defendants that she gather derogatory information about Onondaga County Family Court Judge David G. Klim, now deceased.

During pre-trial discovery, defendants moved for a protective order preventing the disclosure, *inter alia*, of evidence related to Judge Klim. (Dkt. No. 53). Plaintiff opposed the motion. (Dkt. No. 54). On June 6, 2009, Judge DiBianco granted the motion for a protective order, based on the information then before the court, but invited further briefing. (Dkt. No. 58). The parties filed supplemental memoranda on June 13, 2008. (Dkt. Nos. 59, 60). On July 8, 2008, Judge Di Bianco conducted another telephone conference regarding discovery issues. On July 22, 2008, the defendants filed a letter (Dkt. No. 72), responding to certain concerns expressed by Judge Di Bianco at the conference:

> During our July 8, 2008 telephone conference you inquired as to whether the defendants would seek to use, in their defense, information which we have sought to restrain via our Motion for a Protective Order. You have expressed the concern that, in future proceedings, the defense might have the benefit of evidence which the plaintiff has been unable to examine in discovery. By this letter please let me advise of our position.

---

[1] The named defendants are (1) Hon. James C. Tormey, District Administrative Judge for the Fifth Judicial District; (2) Hon. Bryan R. Hedges, Onondaga County Family Court Judge; (3) John R. Voninski, former law clerk to defendant Tormey and Executive Assistant for the Fifth Judicial District from 2000-2006; and (4) William F. Dowling, former law clerk to defendant Hedges and Court Attorney Referee for the Onondaga County Family Court.

> By our Motion we have asked the Court to preclude any inquiry into subjects pertaining to the Hon. David Klim, for any and all purposes. Judge Tormey has directed me to take every available measure to preserve the confidentiality of sensitive information in order to protect the reputation of Judge Klim and his family. We have emphasized that we should not be required to choose between using such information or withholding it to the detriment of our defense.  However, at this juncture, plaintiff's counsel has made it plain that they will continue to deploy accusations involving Judge Klim.  We maintain that plaintiff's articulated reasons are patently insufficient; however, there is no Order impeding them from doing this.  Although these accusations are fictitious and baseless, the defense cannot fairly refute them without evidence.  Thus, if forced to do so, we will use that information.

By Order dated July 28, 2008, Judge Di Bianco directed that the defendants "indicate forthwith whether they plan to utilize any information in their possession regarding Hon. David Klim as part of their defense at trial . . . ."  (Dkt. No. 76). Defendants' counsel did not respond, and later submitted a proposed order, requesting that Judge Di Bianco reaffirm his order to prevent the disclosure of information about Judge Klim.  (Dkt. No. 93-1).  By order dated September 15, 2008, Judge Di Bianco reaffirmed his previous order precluding plaintiff's inquiry into subjects involving Judge Klim.  (Dkt. No. 97).  The order stated that "the need to protect the privacy and reputation of Judge Klim outweighs the potential value of such information to the plaintiff."  (*Id.*)

On February 20, 2009, defendants moved for summary judgment.  (Dkt. No. 129).  Included within the 86 exhibits attached to defendants' summary judgment motion was a Declaration of Judge James C. Tormey, which attached numerous documents containing investigative information related to Judge Klim.  (Dkt. Nos. 129-83, 129-85).  In her opposition papers, plaintiff contended that the defendants

violated Judge Di Bianco's protective orders by electronically filing the exhibits regarding Judge Klim, which had never been furnished in discovery. (Pl's. Mem. of Law in Opp'n to Defs'. Mot. for Sum. J., Dkt. No. 145, at 1-2). Plaintiff's counsel reiterated this contention at oral argument held before Judge Hurd on May 29, 2009. (5/29/10 Transcript, Dkt. No. 162, at 23-25). During oral argument, defendants' counsel represented several times that the documents in question were provided to plaintiff's counsel during discovery and did not contravene Judge Di Bianco's protective order. (*Id*. at 15-17). District Judge Hurd denied defendants' motion for summary judgment on plaintiff's retaliation claim, although he dismissed claims for acts of retaliation prior to May 15, 2004. (Dkt. No. 148). The defendants filed an interlocutory appeal of Judge Hurd's denial of their motion for summary judgment based on the claim that they were entitled to qualified immunity as a matter of law. (Dkt. No. 153).[2]

## II.   Discovery Sanctions

### A.   Applicable Law

Rule 37 of the Federal Rule of Civil Procedure permits a district court to impose

---

[2] Although the interlocutory appeal on qualified immunity is pending, this court would still have jurisdiction to resolve a "collateral" matter such as this discovery sanctions issue. *See, e.g.*, *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) (despite dismissal of Section 1983 action and filing of notice of appeal, the district court retained ancillary jurisdiction to adjudicate collateral matters such as attorney's fees) (citing, *inter alia*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (a district court retains jurisdiction to impose Rule 11 sanctions after plaintiff voluntarily dismisses action). However, this court will not order the defendants to participate in any further discovery pending the resolution of their interlocutory appeal. *See Hallock v. Bonner*, No. 03-CV-195 (DNH/DRH), 2003 WL 22519644 (N.D.N.Y. Nov. 4, 2003) (interlocutory appeal on immunity grounds divests district court of jurisdiction to order discovery).

a range of sanctions upon a party for failing to obey a discovery order. FED. R. CIV. P. 37(b)(2)(A).[3] More severe sanctions, such as preclusion or dismissal, may be imposed when the failure to comply with a court order was due to willfulness, bad faith, or fault on the part of the party refusing discovery. *See, e.g., Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).[4] In lieu of, or in addition to the sanctions listed in Rule 37(b)(2)(A), the court can assess attorneys fees and reasonable expenses, unless the court finds that the failure to obey the order was substantially justified or other circumstances make the award of expenses unjust. FED. R. CIV. P. 37(b)(2)(C).[5] Similarly, Rule 16(f) provides, that if a party or attorney fails to obey a scheduling or other pretrial order, the court, on motion or on its own, "may issue any just orders" including those

---

[3] Failure to comply with a protective order under FED. R. CIV. P. 26(c) can be addressed with sanctions under Rule 37(b). *See, e.g., Flaherty v. Filardi*, 03 Civ. 2167, 2009 WL 3762305 at *5 (S.D.N.Y. Nov. 10, 2009) (citing *Schiller v. City of N.Y.*, No. 04 Civ. 7921, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) (collecting cases)). *See also Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) (a Rule 37(a) order is only one of the orders that can trigger sanctions under Rule 37(b)(2)).

[4] In order for an act to constitute wilfulness, the court's order must be clear, with no misunderstanding of the intent of the order, and there must be no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-53 (2d Cir. 1995). However, Rule 37 "permits the saving grace of substantial justification or harmlessness to blunt the impact of sanctions." *LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005) (citations omitted). "Substantial justification in this context means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Id.* (citations omitted).

[5] An award of reasonable fees incurred as the result of a violation of a discovery order is the least harsh of all the sanctions allowed under Rule 37. *JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, No. 03 Civ. 5562, 2005 WL 1958361, at *12 (S.D.N.Y. Aug. 16, 2005). Under Rule 37, "a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees." *Id. Accord, Armamburu v. Healthcare Financial Services, Inc.*, CV 2002-6535, 2007 WL 2020181, at *4 (E.D.N.Y. July 6, 2007).

authorized by Rule 37(b)(2)(A), and/or may impose attorneys fees and costs under essentially the same standards as Rule 37(b)(2)(C). FED. R. CIV. P. 16(f).

The imposition of sanctions under Rule 37 is within the discretion of the court.[6] *See, e.g., Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d. Cir. 1994). In deciding whether to impose sanctions under Rule 37, the court considers the following factors: "(1) the willfulness of the noncompliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of his noncompliance." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y.2002) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995)).

    B.    **Application**

        1.    **Violations of Judge Di Bianco's Discovery Orders**

Plaintiff contends that the defendants violated Judge Di Bianco's protective order in February 2009 by submitting previously undisclosed documents in support of their summary judgment motion. Those documents reflected issues regarding the late Judge Klim's management of his Family Court caseload and his non-case-related travel, which were covered by the broad language of Judge Di Bianco's prior protective orders. (Exs. to Decl. of the Hon. James C. Tormey in support of

---

[6] Magistrate Judges may impose monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders, subject to review by a district court under a "clearly erroneous or contrary to law" standard. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

Defendants' Summary Judgement Motion, Dkt. No. 129-85).

The defendants correctly point out that the centerpiece of plaintiff's action is the claim that defendants Tormey and Voninski sought plaintiff's assistance in gathering negative information about Judge Klim's work activities, purportedly in an effort to undermine Judge Klim's attempts to win election as a state Supreme Court Judge. To counter this claim, the defendants documented that they had considerable negative information about Judge Klim that did not originate from the plaintiff. Further, defendants asserted that they addressed Judge Klim's problems discretely, without any disclosures that might have affected his prospects as a candidate for judicial office. (Mem. in Opposition to Pl.'s Motion for Protective Order Sanctions, Dkt. No. 170, at 4-5).

In opposing the imposition of sanctions, defendants argue that the parties "understood" that Judge Di Bianco's protective order did not encompass information regarding Judge Klim's caseload and travel. (Dkt. No. 170 at 4). However, Judge Di Bianco's orders did not distinguish between categories of information regarding Judge Klim. (Dkt. Nos. 58, 97). Moreover, Judge Di Bianco's original protective order was issued based, in part, on a Confidential Declaration of Judge Tormey (dated April 2, 2008) which discussed negative information about Judge Klim that the defendants hoped to keep confidential, including the issues involving Judge Klim's management of his docket and his travel. (Dkt. No. 86 (sealed)). In fact, Judge Tormey's 2008 declaration in support of the protective order explicitly mentioned and attached at least some of the documents regarding Judge Klim's case management and travel that were

8

later attached to his February 2009 Declaration in support of defendants' summary judgment motion. (Dkt. No. 129-85 at 1-4, 26-28, 30-32).[7] Hence, it is difficult to credit the suggestion of defense counsel that he and the defendants believed that Judge Di Bianco's protective order did not cover documents and information relating to Judge Klim's management of his docket and non-case-related travel.

This court finds that, in initially seeking the protective order, the defendants were trying to maintain the confidentiality of all negative information about Judge Klim, including the information about his case management and travel. The defendants, at first, hoped that they could prevent the plaintiffs from pursuing the claim that certain defendants had asked her to gather derogatory information regarding Judge Klim. However, at some point, in or before September 2008, the defendants apparently concluded that plaintiff was not going to relinquish that claim, and that defendants would need to use some of the negative information about Judge Klim in their defense. Accordingly, defense counsel did not object, during depositions in September 2008, when plaintiff's counsel questioned the defendants regarding Judge Klim's caseload management and travel issues. (AAG Quackenbush Decl., Dkt. No. 170-1, ¶¶ 12, 13).

While the defendants and their counsel may have requested Judge Di Bianco to enter the Protective Order in the first instance, they did not have the unilateral authority to ignore it or change its terms without judicial approval. That having been

---

[7] The documents attached to both declarations of Judge Tormey included his July 12, 2001 memorandum "Re: Committee Assignments" to Judge Pigott and a group of e-mails relating to Judge Klim's claim for reimbursement of travel expenses for a trip in May 2001.

9

said, by the time defendants were deposed, plaintiff's counsel was asking questions about Judge Klim which appeared to conflict with Judge DiBianco's September 15, 2008 order "precluding plaintiff's inquiry into subjects involving the late Hon. David Klim." (Dkt. No. 97).[8]  The fact that the protective order seemed to be narrowed, *sub silentio*, in light of developments in the case, somewhat mitigates the defendants' decision that they could publicly file documents relating to problems with Judge Klim's case management and travel.[9]

However, the fact that defendants waited until their summary judgment motion was filed to disclose the subject documents to the plaintiff was completely unjustified.[10]  At the point when defense counsel concluded that Judge Di Bianco's

---

[8] It should be noted that, because the plaintiff was not privy to the *in camera* submissions supporting the defendants' request for a protective order, they would have a much more credible claim than the defendants to be uncertain about the scope of Judge Di Bianco's protective orders. It is also not surprising that plaintiff's counsel would try to test the boundaries of the protective order by questioning the defendants about issues relating to Judge Klim, which were critical to plaintiff's claims.

[9] To the extend defendants relied on documents to support their summary judgment motion, public filing of those documents was presumptively required under Second Circuit law. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("[D]ocuments submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment.  Because the First Amendment presumption gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption, the presumption of access here can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.").

[10] Defense counsel repeatedly assured Judge Hurd that he previously disclosed the documents regarding Judge Klim (Dkt. No. 162 at 15-17), and this court directed counsel to document any prior discovery of these documents (Dkt. No. 171 at 17).  However, the defendants have provided no information in their recent submission (Dkt. No. 170) indicating that the documents were provided to plaintiff before the defendants filed their summary judgment motion.

protective order was somehow narrowed so that it no longer protected the documents relating to Judge Klim's case management and travel, those documents should have been disclosed to the opposing party.  When it became clear that the defendants intended to use some of these documents to support their defenses, they became obligated to provide them, as a supplement to their initial disclosures under FED. R. CIV. P. 26(a)(1)(A)(ii), without awaiting a discovery request.  FED. R. CIV. P. 26(e)(1).  The failure to produce these documents on a timely basis disadvantaged the plaintiffs in connection with the defendants' depositions and in defending the summary judgment motion.

The defendants' delay in disclosing the documents relating to Judge Klim also violated Judge Di Bianco's discovery orders.  During a conference in July 2008, Judge Di Bianco clearly expressed his concern that "the defense might have the benefit of evidence which the plaintiff has been unable to examine in discovery" as a result of the protective order.  (*See* Dkt. No. 72, quoted further above).  On July 28, 2008, the judge ordered defendants to "indicate forthwith whether they plan to utilize any information in their possession regarding Hon. David Klim as part of their defense at trial . . . ."  (Dkt. No. 76).  The failure of defendants to disclose the documents they intended to use until they filed their summary judgment motion (in February 2009) is an inexcusable violation of Judge Di Bianco's orders that reflects, at least, gross negligence.

During a conference with the parties on February 1, 2010, this court directed defense counsel to submit an affidavit addressing "specifically the details of your

11

disclosure to plaintiff's attorney of the documents attached to your summary judgment motion relating to the alleged misconduct of Judge Klim or the substance of those documents." (Dkt. No. 171 at 17). The declaration of AAG Quackenbush (Dkt. No. 170-1) points out that the subject matter of some of these documents was raised in plaintiff's questioning of the defendants during their depositions. However, defense counsel does not repeat or document the earlier claims that he made to Judge Hurd that the subject documents were previously produced. AAG Quackenbush also does not explain whether his apparently erroneous statements to Judge Hurd that he produced the documents reflected his mistaken belief that he had previously disclosed them or something else. Defense counsel seems to offer an implicit, perhaps *post hoc* explanation as to why the subject documents were not disclosed prior to the filing of the defendants' summary judgment motions; his recent affidavit notes that the plaintiff did not specifically request those documents after defendants' depositions. (Dkt. No. 170-1 ¶ 14). As noted above, plaintiff's counsel had reason to be uncertain as to whether the protective order would bar production of such documents; and, in any event, defendants were obligated to produce these documents without a specific request.

This court makes no finding as to whether AAG Quackenbush intentionally sought to mislead Judge Hurd during oral argument on the summary judgment motion. However, defense counsel's various efforts to explain his conduct are troubling to this court and provide no justification for his failure to comply with Judge Di Bianco's discovery orders.

## 2. Appropriate Sanctions

Plaintiff asks the court to order defendants to pay more than $12,000 in attorney's fees and costs, which were incurred primarily in connection with the protracted litigation regarding the protective order. (Dkt. No. 173-2). However, the court concludes that the defendants' efforts to seek and maintain the protective order relating to the late Judge Klim, at least through July 2008, were appropriate;[11] the fees and expenses incurred by plaintiff in litigating those issues were not caused by defense counsel's violations of Judge Di Bianco's orders. While the belated disclosure of the documents relating to Judge Klim may have disadvantaged plaintiff in defending the summary judgment motion, those documents were a minor part of a massive filing by the defendants. (*See* Dkt. Nos. 129 - 129-86). This court concludes that it would not be feasible to determine whether any of the fees and expenses incurred in opposing the summary judgment motion can reasonably be attributed to defendants' failure to comply with the discovery orders.

The court will order defendants to reimburse plaintiff for any reasonable fees

---

[11] As discussed above, the defendants initially sought to have all negative information relating to Judge Klim protected from disclosure. On July 28, 2008, Judge Di Bianco ordered defendants to disclose any information regarding Judge Klim that they intended to use in their defense. (Dkt. No. 76). In or before September 2008, defendants apparently determined that they would need to use some of the information, regarding Judge Klim's case management and travel, to support their defense. At that point, the defendants violated Judge Di Bianco's orders by failing to disclose the subject documents. However, other types of information regarding Judge Klim appropriately remain within the scope of the protective order and have not been disclosed. (Plaintiff is unaware of the content of the *in camera* submissions of the defendants in connection with their application for a protective order, so would not know this.) This court trusts that defendants would not, at this point, seek to disclose the other information regarding Judge Klim in their defense. If they do, they need to obtain prior approval of this court; and would presumably then face a preclusion motion.

and expenses relating to its February 2010 filing in support of sanctions (Dkt. No. 172) and its participation in a June 11, 2009 telephone conference with Judge Di Bianco regarding possible violations of his protective order.  According to submitted time records (Dkt. No. 173-2), plaintiffs attorneys (primarily Scott R. Abraham, Esq.) expended approximately 9.2 hours of attorney time in connection with these activities. The legal authority cited by plaintiff's counsel in support of his fee application (Dkt. No. 173) relied upon "lodestar" analysis,[12] but failed to address the "forum rule." Current Second Circuit authority would presumptively call for setting a reasonable hourly rate based on prevailing fee rates in this district, where the litigation is pending, as opposed to the substantially higher fees charged by plaintiff's counsel in the

---

[12] The Second Circuit has stated that "the meaning of the term 'lodestar' has shifted over time and its value as a metaphor has deteriorated to the point of unhelpfulness." *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) () (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 117 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008)).  Very recently, however, the Supreme Court has reaffirmed the vitality of the lodestar analysis.  *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 2010 WL 1558980, at *6 (April 21, 2010) (the lodestar method yields a fee that is presumptively reasonable–i.e., a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case").  In *Arbor Hill*, the Second Circuit set forth a standard it termed "the presumptively reasonable fee."  In calculating the presumptively reasonable fee, courts must bear in mind all of the case-specific variables that the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively."  *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (citations omitted).  The Second Circuit's "presumptively reasonable fee" analysis, while designed to pay no more than what would be necessary to attract competent counsel, is not inconsistent with the Supreme Court's recent formulation of the lodestar method. *See Perdue*, 2010 WL 1558980, at *6 (the lodestar method, based on the prevailing hourly rate in the relevant community, produces an award that roughly approximates the fee that the attorney would have received for representing a paying client who was billed by the hour in a comparable case).

14

Southern District of New York.[13]  Applying the current standards for setting fees in the Second Circuit, and noting that this court has some discretion in imposing sanctions that also serve a deterrent purpose,[14] this court imposes sanctions of $2,000 jointly on the defendants and their attorneys.

Moreover, assuming that the defendants are not dismissed from this action as a result of the pending appeal on qualified immunity issues, plaintiff may need an opportunity to continue the deposition of the defendants.  Defense counsel claims that plaintiff's counsel was able to question the defendants on the subjects of Judge Klim's case management and travel, even though he was not provided the subject documents.  However, plaintiff's counsel may believe he needs to ask follow-up questions about

---

[13] According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.  The court may apply an out-of-district rate (or some other rate, based on the applicable case-specific variables) if, in calculating the presumptively reasonable fee, it is clear that a reasonable, paying client would have paid those higher rates.  While the Second Circuit has disavowed strict adherence to the forum rule where circumstances have warranted it, due to its belief that district courts should award fees just high enough to attract competent counsel, a deviation from the forum rule is only appropriate in the unusual case, in which a litigant demonstrates that her selection of counsel was reasonable under the circumstances.  *Simmons v. New York City Transit Authority*, 575 F.3d at 174-175 (internal quotations and citations omitted).

[14] Rule 37 sanctions are intended to serve three purposes: "First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault."  *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 70 (2d Cir. 1988).  *See also Cine Forty-Second St.Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-1068 (2d Cir. 1979) (court may impose more severe sanctions serving a deterrent purpose when the offending party was grossly negligent); *Armamburu v. Healthcare Financial Services, Inc.*, 2007 WL 2020181, at *4-*5 (awarding sanctions of fees and costs in part to deter future disobedience to discovery orders).

the belatedly disclosed documents. If the appeal is decided in plaintiff's favor, this court will allow plaintiff to determine whether it is necessary to re-open the defendants' depositions, even if the parties cannot agree that further questioning with respect to the subject documents is appropriate. If plaintiff elects to continue the depositions of the defendants, she may apply for reimbursement of related attorney's fees and expenses. The court will thereafter determine whether re-opening the depositions was necessary and whether the follow-up questions of plaintiff were appropriate, and then will decide whether further monetary sanctions should be ordered.

Given the tortured procedural history of this case, only some of which is discussed herein, the court does not recommend more drastic sanctions, such as precluding defenses or evidence.[15] The discovery process in this case has been unusually contentious and the neither side's conduct has been above reproach. However, the defendants were grossly negligent in withholding the subject documents until they filed their summary judgment motion, after receiving ample warning of the consequences of non-disclosure of documents they intended to use in their defense. Hence, the monetary sanctions described above are appropriate under the circumstances.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the prior protective orders of Magistrate Judge Di Bianco

---

[15] If the case proceeds to trial, District Judge Hurd, may, of course, consider any motions *in limine* that plaintiff may bring and can consider the conduct of the defendants discussed herein.

(Dkt. Nos. 58, 97) are modified to allow the parties to inquire about and disclose information relating to the late Judge Klim's management of his Family Court docket and non-case related travel, but shall otherwise continue in force, and it is further

**ORDERED** that plaintiff's application for sanctions, attorney's fees, and costs (Dkt. Nos. 172, 173) is **GRANTED** insofar as defendants and their counsel, pursuant to FED. R. CIV. P. 37(b)(2)(C) and 16(f)(2), shall reimburse plaintiff for fees and expenses in the amount of $2,000, incurred as a result of defendants' failure to obey Judge Di Bianco's discovery orders, and it is further

**ORDERED**, that, if the pending interlocutory appeal does not result in the dismissal of this action against defendants, plaintiff will be afforded a further opportunity to depose defendants with respect to the documents attached to defendants' summary judgment motion (Dkt. No. 129-85), and may then apply for reimbursement of any further fees and expenses incurred in connection with continuing those depositions.  The court will then conclude whether further questioning of defendants was necessary and appropriate, and will determine whether to order additional sanctions.

**Dated:  April 29, 2010**

*[Signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge