09-2960-cv
Morin v. Tormey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

Heard: October 18, 2010            Decided: November 15, 2010

Docket No. 09-2960-cv

- - - - - - - - - - - - - - - - - - - - - - - - -

BOBETTE J. MORIN,
    Plaintiff-Appellee,

v.

JAMES TORMEY, individually and in his official
capacity as District Administrative Judge of
the Fifth Judicial District, BRYAN R. HEDGES,
individually and in his official capacity as
Judge of the Onondaga Family Court, JOHN R. VONINSKI,
individually and in his official capacity as
Executive Assistant to the District Administra-
tive Judge, WILLIAM F. DOWLING, individually
and in his official capacities as Law Clerk to
Family Court Judge Bryan Hedges and as Fifth
District Court Attorney Referee,
    Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - -

Before: FEINBERG, NEWMAN, and LYNCH, Circuit Judges.

    Appeal from the June 3, 2009, order of the United States District Court for the Northern District of New York (David N. Hurd, District Judge), denying Defendants-Appellants motion for summary judgment sought on the ground of qualified immunity. The Plaintiff alleges that she was subjected to adverse employment actions in violation of the First Amendment because of her refusal to assist the Defendants in

gathering adverse information about a Family Court judge to aid their efforts to prevent the judge's election to a higher judicial office.

Affirmed.

>Victor Paladino, Asst. Solicitor General, Albany, N.Y. (Andrew M. Cuomo, N.Y. State Atty. General, Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, Office of the Atty. General, Albany, N.Y., on the brief), for Defendants-Appellants.

>William D. Frumkin, White Plains, N.Y. (Elizabeth E. Hunter, Sujan H. Vasavada, on the brief), for Plaintiff-Appellee.

JON O. NEWMAN, Circuit Judge.

This interlocutory appeal from the denial of a motion to dismiss primarily concerns an allegation of retaliatory action taken against a state court employee because of her refusal to engage in partisan political activity. Defendants-Appellants James C. Tormey, State Supreme Court Justice and District Administrative Judge for the Fifth Judicial District; Bryan R. Hedges, Judge of the Onondaga Family Court; John R. Voninski, the former Executive Assistant to Judge Tormey; and William F. Dowling, former law clerk to Judge Hedges and currently a Court Attorney Referee in the Onondaga Family Court (collectively, "the Defendants"), appeal from the June 3, 2009, order of the United States District Court for the Northern District of New York, David N. Hurd, Judge, denying their motion for summary judgment. The Appellants asserted the defense of qualified immunity to a suit by

-2-

Plaintiff-Appellee Bobette J. Morin, formerly the Chief Clerk of the Onondaga County Family Court ("OCFC"). The Appellants also alleged that Morin was a policymaker exempt from First Amendment protection in her job. Morin's suit, grounded on 42 U.S.C. § 1983, claimed reinstatement and damages for the Defendants' alleged acts of retaliation and creation of a hostile work environment in violation of the First Amendment.

Accepting Morin's allegations as true for the purposes of this appeal, we agree with the District Court that neither the defense of qualified immunity nor Morin's alleged status as a policymaker has been established as a matter of law at this stage of the litigation. We therefore affirm.

## Background

Morin's affidavit alleged the following facts. She has been an employee of the New York State Unified Court System since 1983, became Deputy Chief Clerk of the OCFC in 1986, and became Chief Clerk in 1994. In the summer of 2002, Voninski, then Executive Assistant to District Administrative Judge Tormey, escorted Morin to Tormey's chambers. Tormey greeted Morin with a kiss and a hug and commended her for the "great job" she was doing. Tormey then told Morin that OCFC Judge David G. Klim was running for State Supreme Court Justice on the Democratic ticket against "good Republican friends of mine" and asked Morin if she "was a good Republican" and whether she "wanted to

be a 'team player.'" Tormey and Voninski demanded that Morin "provide negative information about Judge Klim with respect to his upcoming judicial election for Supreme Court" and "ordered [her] to 'dish dirt' on Judge Klim." They requested her "to monitor Judge Klim's activities and to report his 'comings and goings.'" Morin replied that it was not her position "to spy on judges during a judicial election" and that "it was repeatedly emphasized to me that I was not to engage in political activity involving the courts." She added that her only monitoring task was to maintain a list of each judge's cases that were approaching the 180-day deadline for disposing of cases. Hearing her response, Tormey and Voninski "became visibly angry," and Tormey "directed [her] to 'get out of [his] office!'".

Shortly thereafter and continuing until 2006, Morin was subjected to various adverse employment actions taken in retaliation for her refusal to assist Tormey and Voninski in their political objectives. These actions included denial of her requests for resources and supplies, reassignment for temporary employment requiring four hours of commuting time, reassignment to a "cold, dank" basement office into which water leaked. In February 2006, Dowling told Morin that she had "pissed off the wrong person," that she "would be sorry [she] ever crossed his path," and that "he was going directly to Defendants Voninski and Tormey who 'want to get rid of you.'" In March 2007 Morin was subjected to "involuntary removal" from her position as

-4-

Chief Clerk and a "forced demotion."

The District Court denied the Defendants' motion for summary judgment, which was based on qualified immunity, concluding that, viewed in the light most favorable to the Plaintiff, her evidence showed a violation of her "constitutional right to free speech" and precluded summary judgment as a matter of law, and that she had "presented evidence of genuine issues of material fact relating to each of the elements of her First Amendment retaliation and hostile work environment claims."[1]

The Defendants took this interlocutory appeal to seek review of the denial of their motion for summary judgment based on qualified immunity. Morin moved to dismiss the interlocutory appeal, arguing that we lack jurisdiction to entertain such an appeal where the denial of the defense turns on the resolution of disputed facts, see O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 38 (2d Cir. 2003). A motions panel referred the motion to dismiss to the merits panel.

Discussion

A. Jurisdiction

---

[1] The District Court granted the Defendants' motion to the extent that it sought dismissal, on statute of limitations grounds, of the Plaintiff's claims based on retaliation that occurred prior to May 14, 2004.

"[T]he denial of a qualified-immunity-based motion for summary judgment is immediately appealable to the extent that the district court has denied the motion as a matter of law, although not to the extent that the defense turns solely on the resolution of questions of fact." Vargo, 331 F.3d at 38; see Salim v. Proulx, 93 F.3d 86, 89-91 (2d Cir. 1996).

Had the District Court denied the Defendants' motion for summary judgment solely on the ground that their defense of qualified immunity turned on disputed issues of fact, we would have to dismiss the appeal, but since the Court ruled that on the Plaintiff's version of the facts, the Defendants are not entitled to summary judgment as a matter of law, we have jurisdiction to consider their appeal. Vargo, 331 F.3d at 38 ("[A] defendant may pursue an immediate appeal if he adopts the plaintiff's version of the facts, contending that the facts asserted by the plaintiff entitle the defendant to the defense of qualified immunity as a matter of law." (internal quotation marks and alterations omitted)); see Salim, 93 F.3d at 89.

II. The Merits

(a) Retaliation in violation of the First Amendment. The parties challenge and defend the District Court's ruling as if this case concerned a public employee's expression of views. They debate the significance of Supreme Court decisions in Garcetti v. Ceballos, 547 U.S. 410 (2006), Connick v. Myers, 461 U.S. 138 (1983), and Pickering

-6-

v. Board of Education, 391 U.S. 563 (1968). In these decisions, the Court ruled that whether adverse action could be taken against a public employee for expression of views turned on whether the employee expressed her views in the performance of her official duties or as a private citizen. But for the Pickering line of cases to apply, there must be an expression of views. In Pickering and Garcetti, the employee had expressed what unquestionably were views. The plaintiff in Pickering wrote a letter to a local newspaper concerning a proposed tax increase. 391 U.S. at 564. The plaintiff in Garcetti authored a memorandum to his superiors expressing his view about irregularities in an affidavit supporting a search warrant. 547 U.S. at 413-14. Connick does not precisely involve the expression of a view, but the questionnaire prepared and circulated to co-workers soliciting their views on office management practices, 461 U.S. at 141, could fairly be considered an attempt by the employee to precipitate an exchange of views.

By contrast, Morin is suing to assert her First Amendment right not to be pressed into participating in partisan political activities. That right draws its decisional basis not from the Garcetti/Connick/Pickering trilogy, but from decisions such as Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), Branti v. Finkel, 445 U.S. 507 (1980), and Elrod v. Burns, 427 U.S. 347 (1976). As the Court stated in Rutan, Elrod and Branti "decided that the First

Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." Rutan, 497 U.S. at 64.

Morin did not initiate the expression of any views, nor did she volunteer comments on any issues, whether of public or private citizen concern. She just said, "No." Although the Defendants contend that Morin expressed a "view" that what she was asked to do did not fall within her official duties, her refusal cannot fairly be characterized as a "view" within the meaning of Pickering. To call her "No" answer to the demand that she engage in partisan political activities the expression of a "view" is to trifle with the viewpoint protection doctrine of the Garcetti/Connick/Pickering trilogy and to disregard the more fundamental and equally well-established protection of the Elrod/Branti/Rutan trilogy. Plaintiff expressed no political opinion; she simply asserted her right not to be pressed into political activity. The right to be free from retaliation based on political affiliation is not limited to members of an opposing political party, but extends to those who are perceived by those retaliating to be apolitical or insufficiently politically loyal.

Unlike a case such as McEvoy v. Spencer, 124 F.3d 92 (2d Cir. 1997), which we noted presented issues "at the intersection of the

doctrines set forth in" Pickering and Elrod, McEvoy, 124 F.3d at 94; see id. at 99-100 n.4, this case is plainly governed by the Elrod/Branti/Rutan trilogy. In short, the issue in this case is whether the Plaintiff could be retaliated against based on her political affiliation (or non-affiliation), not whether she could be retaliated against based on any protected speech.

On the facts alleged by Morin, which the Defendants acknowledge they are accepting as true for purposes of this attempt to have the case dismissed as a matter of law on the ground of qualified immunity, Morin is clearly entitled to proceed to trial at which the Defendants will have an opportunity to challenge her claim that the Defendants unlawfully retaliated against her for exercising her right to decline to participate in political activity.

(b) Policymaker exception. The Defendants also challenge the District Court's ruling on the ground that Morin was a policymaker. The Supreme Court has recognized that there is a "policymaker" exception to the Elrod/Branti/Rutan trilogy,[2] but has also made it

---

[2]We have recognized that "the policymaking status of the discharged or demoted employee is very significant to the Pickering balance" of the employee's right to speak versus the employer's interest in the effective operation of the workplace," McEvoy, 124 F.3d at 103. However, since Morin's "No" answer was not an expression of her "views" within the meaning of Pickering, the Pickering

-9-

clear that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position." Branti, 445 U.S. 518. The exception applies if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id.; see Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988) ("[P]olitical affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance . . . ."). This inquiry generally requires consideration of the duties of the office as set forth in the job description, see Gordon v. County of Rockland, 110 F.3d 886, 888 (2d Cir. 1997), as well as applicable regulations, see McEvoy, 124 F.3d at 105 (duties outlined in city charter). Our Court has identified several non-exclusive factors relevant to the inquiry. See Vezzetti v. Pellegrini, 22 F.3d 483 (2d Cir. 1994). These are that the employee is (1) exempt from civil service protection,[3] has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political

---

balancing of interests has no relevance to this case.

[3] We have noted that this factor is not conclusive. See Gordon, 110 F.3d at 890 n.5.

-10-

leaders. See id. at 486.

Morin is exempt from civil service protection, has some technical competence (although she is not required to be an attorney), and has contact with elected judges, but she has only two employees working for her and has no hiring authority,[4] is not authorized to speak in the name of the Defendants or other policymakers, cannot reasonably be perceived as a policymaker, does not influence government programs, and is not responsive to partisan politics. Although her job description includes consulting with judges and administrators "to

---

[4] In Adler v. Pataki, we noted that the plaintiff "supervised at least two employees," 185 F.3d 35, 46 (2d Cir. 1999), in support of our conclusion that he was a policymaker. However, the plaintiff in Adler, a deputy counsel for litigation in New York State's Office of Mental Retardation and Developmental Disabilities, was an attorney who conceded that he "oversaw a major environmental litigation with potentially serious repercussions for state government." Id. The fact that he supervised "at least two employees" was not central to our conclusion in that case, and we have previously weighed this factor against policymaker status where the employee was not in charge of a large group of employees. See Gordon, 110 F.3d at 890; cf. Vezzetti, 22 F.3d at 486 (noting, in support of a policymaker ruling, that plaintiff "managed about sixty employees and had broad authority to make hiring decisions.").

-11-

develop court policy," her primary duties are managing court operations.[5] We note that New York's Rules Governing Conduct of Non-

---

[5]We recognize that "[b]ecause the policymaker question is one of law for the court, it is not a disputed issue of fact which we are required . . . to construe in favor of the plaintiffs for whom we have official or statutory job descriptions." Danahy v. Buscaglia, 134 F.3d 1185, 1191 (2d Cir. 1998); see also id. (Whether someone is a policymaker "presents a question of law informed solely by the job description and the powers of the office."). However, "this court's challenge is to discern the duties inherent in the office[] held by the plaintiff[]." Gordon, 110 F.3d at 888 (emphasis omitted). Even if there is an official job description in the record, there can be underlying factual questions about the actual powers of the job that would be relevant to answering this question, at least when the job description does not, by itself, conclusively establish whether the employee is a policymaker. The job description in the instant case contains a disclaimer that the "[t]ypical duties," and "distinguishing features of work it contains "describe the general nature and level of work being performed by persons assigned to [the title of Chief Clerk]. [But] [t]hey do not include all job duties performed by employees in this title and every position does not necessarily require these duties." (Emphasis added). In the instant case, we cannot determine, on the basis of this official job description alone,

Judicial Employees, of which the Defendants were surely aware, explicitly states, "Court employees shall not engage in political activity during scheduled work hours or at the workplace." N.Y. Comp. Codes R. & Regs. tit. 22, § 50.1(III)(B). While the fact that an employee is prohibited from engaging in political activity on the job might not be dispositive of whether she is a policymaker, the fact that Morin was barred from any political activity on the job cuts against any claim that political affiliation was an appropriate requirement for her job.

Thus, the <u>Vezzetti</u> factors, which are non-exclusive, <u>see</u> <u>Vezzetti, 22 F.3d at 486</u>, tilt on balance against a policymaker role. More significantly, as the Defendants recognize, "[t]he ultimate question is whether party affiliation is an appropriate requirement for the effective performance of the public offic[e] involved," Brief for Defendants-Appellants at 24 (citing <u>Gronowski v. Spencer</u>, 424 F.3d 285, 292 (2d Cir. 2005)) Nothing in the record indicates that political activity or ideology was necessary to the effective

---

whether Morin was a policymaker, and, Morin disputes the inherent duties of <u>her</u> particular job as Chief Clerk at the OCFC. As the Defendants have necessarily accepted Morin's factual assertions as true in order to invoke our jurisdiction to hear this appeal, we have accepted Morin's description of her inherent job duties in analyzing whether the Defendants have shown that she is a policymaker.

-13-

performance of Morin's position as Chief Clerk of the OCFC, and the Defendants have not argued that political loyalty to Voninski and Tormey was an appropriate job requirement.

While there may be circumstances in which a judge elected on a platform of institutional reform may require a politically compatible chief clerk, nothing in the record before us indicates that this was true at the OCFC. Thus, the District Court did not err in concluding as a matter of law that, on the record thus far developed, Morin was not a policymaker exempt from First Amendment protection.

The Defendants have also failed to establish that it was objectively reasonable for them to believe that Morin was a policymaker such that they would be entitled to qualified immunity. See Danahy v. Buscaglia, 134 F.3d 1185, 1189 (2d Cir. 1998). While, as we have noted, a few of the factors relevant to determining policymaker status pointed toward that status, the Defendants have failed to present any evidence to establish a reasonable belief in the fundamental point: that Morin's job legitimately required political affiliation, that is, that there was a "rational connection" between her "shared ideology" with the Defendants and her job performance, see Savage, 850 F.2d at 68. On the present record, the District Judge did not err in concluding as a matter of law that the Defendants could not reasonably have believed that Morin was a policymaker.[6]

---

[6] We express no view on whether, on a fuller record developed at

-14-

Conclusion

The order of the District Court is affirmed.

---

trial, the Defendants would be able to establish that political loyalty is a requirement for Morin's position, or at least that they were entitled reasonably to have so believed.