UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBETTE J. MORIN,

                                Plaintiff,

                                                                               Civil Action No:
   -against-                                                  07-cv-00517-DNH-ATB

HON. JAMES C. TORMEY, Individually and in his Official Capacity as District Administrative Judge of the Fifth Judicial District, HON. BRYAN R. HEDGES, Individually and in his Official Capacity as Judge of the Onondaga Family Court, JOHN R. VONINSKI, Individually and in his Official Capacity as Executive Assistant to the District Administrative Judge, and WILLIAM F. DOWLING, Individually and in his Official Capacities as Law Clerk to FCJ Bryan Hedges and as Fifth District Court Attorney Referee, THE OFFICE OF COURT ADMINISTRATION OF THE UNIFIED COURT SYSTEM, and THE STATE OF NEW YORK,

                                Defendants.
_____

## DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW

                                       GILBERTI STINZIANO HEINTZ
                                            &SMITH, P.C.

                                     /s/ *Gary T. Kelder*
                                     /s/ *Timothy J. Lambrecht*
                                     _____
                                     Gary T. Kelder, Esq., Of Counsel (610536)
                                     Timothy J. Lambrecht, Esq. (510390)
                                     *Attorneys for Defendant, John R. Voninski*
                                     555 East Genesee Street
                                     Syracuse, New York 13202-2159
                                     Tel.  (315) 442-0100
                                     Fax. (315) 442-0169

## PRELIMINARY STATEMENT

Plaintiff's action brought pursuant to 42 U.S.C. § 1983 claims that Defendants retaliated against her assertion of her First Amendment right not to be pressed into engaging in partisan political activities. Her pivotal allegation is that during the summer of 2002, Defendants Tormey and Voninski asked her "to spy on and provide incorrect negative information about Judge Klim." Complaint at ¶ 42 (dkt. 1). She claims that because she refused to do this, Defendants retaliated against her and subjected her to a hostile work environment. Defendants completely deny these allegations.[1]

The truth of this matter is much different than how Plaintiff portrays it in her complaint. Plaintiff is correct that there was a hostile work environment at Onondaga County Family Court ("OCFC"). She created it.

Twice—in 1996 and later in 2007—independent investigations found that she created a hostile work environment for her employees. These investigations were conducted by investigators totally unaffiliated with the Fifth Judicial District: the New York State Unified Court System Equal Employment Office in 1996 and the Office of the Inspector General for the New York State Unified Court System in 2007.

Their findings, nearly a decade apart, look remarkably similar. Both investigations found that Plaintiff created an intimidating and harassing work environment. Both found that her interactions with OCFC staff were demeaning and insensitive. Both found that employees under her feared her vindictiveness. Both found that her actions had a destructive effect on employee morale.

And apropos for this lawsuit, these investigations also found that rather than accept responsibility for the atmosphere she created, she deflected it and placed the blame on her co-

---

[1] Rather than sending the Court four separate trial briefs, all of Defendants join in this trial brief.

workers, who she characterized as incompetent or resentful. Her view was that she had been unfairly targeted for the investigations. As one investigator noted, she inverted her circumstances, claiming that she was the one experiencing hardship—when she actually was inflicting it on others. The allegations that she raises in her complaint are simply more of the same.

In fact, the most telling thing about these allegations is this: when she supposedly was asked to spy on and dig dirt up on Judge Klim in 2002, Plaintiff did not file any claim or complaint with any authority empowered to do anything about it. It was only five years later, after a second independent investigation into her improper conduct as Court Clerk, that she filed this complaint and made this allegation for the first time. One has to ask, why? The apparent answer is that this complaint was filed in retaliation for that investigation.

None of her allegations have merit. All they represent are Plaintiff's refusal to accept the consequences of her own actions.

## ARGUMENT

**I. Defendants Did Not Violate Plaintiff's First Amendment Rights**

    **A. First Amendment: Elements of Retaliation Claim**

To succeed on her First Amendment retaliation claim, the Plaintiff must prove by a preponderance of the evidence each of the following elements as to each of the individual Defendants:

- she engaged in constitutionally protected conduct under the First Amendment;

- she suffered an adverse employment action and/or a hostile working environment, which were caused by actions or decisions of each of the

> Defendants that were motivated by retaliation against her for her exercise of her First Amendment right, as opposed to being motivated by or based upon legitimate concerns regarding the quality of her job performance; and

- Defendants' actions were under color of the authority of the State of New York.

*See Cotarelo v. Sleepy Hollow Police Dep't*, 460 F.3d 247, 253 (2d Cir. 2006) (stating factors plaintiff must show to establish First Amendment retaliation claim based on plaintiff's political affiliation); *Vezzetti v. Pellegrini*, 22 F. 3d 483, 487 (2d Cir. 1994) (holding same).

Plaintiff's retaliation claims hinge entirely on whether she can prove she was pressed into spying and "digging up dirt" on Judge Klim.[2] She does not allege any other legal basis for them. If this event did not happen—and the testimony will show that it did not—Plaintiff's retaliation claims are not actionable.

### B. Adverse Employment Action

Not every employment action an employee views as detrimental rises to the level of an adverse employment action. *See*, *e.g.*, *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("[A] merely discourteous working environment does not rise to the level of First Amendment retaliation"). To show an adverse employment action, Plaintiff must prove that Defendants acted against her in a way such that it would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006); *see also Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (holding same). Otherwise, the alleged retaliatory act "is simply *de minimis* and therefore

---

[2] It should be noted that neither Defendant Dowling nor Defendant Hedges are alleged to have participated in the purported Tormey-Voninski chambers conversation in 2002 and neither are alleged to have ever approached Plaintiff on the subject.

outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (internal citations omitted).

Typical adverse employment actions include termination, demotion, a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (holding same). Lesser acts do not rise to that level.

In fact, many of the kinds of actions Plaintiff complains of do not rise to the level of adverse employment action. These include:

- the assignment of tasks within the description or duties of position, even if less desirable;

- reprimand and monitoring by supervisors for poor attendance;

- negative or otherwise insulting workplace statements;

- the failure to provide a preferred office space; and

- micromanagement or excessive scrutiny by superiors.[3]

---

[3] *Nidzon v. Konica Minolta Bus. Solutions, USA, Inc.*, 2010 U.S. Dist. LEXIS 114442, *26 (S.D.N.Y. Oct. 22, 2010) ("The assignment of tasks within the description or duties of position, even if less desirable, do not rise to level of adverse employment action.") (citations omitted); *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 498-500 (S.D.N.Y. 2010) ("conclusory allegations that she was not given a free-period, denied 'late entry,' not permitted to check email, reprimanded by her supervisors and scrutinized for her sporadic attendance do not amount to 'adverse employment actions' because they do not constitute materially adverse changes in the terms, conditions or privileges of her employment."); *Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999) ("While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation"); *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002), aff'd, 76 Fed. Appx. 366, 2003 WL 22056230 (2d Cir. Sep. 4, 2003) ("Under these circumstances, Defendants' failure to provide Plaintiff with a private office or subordinates does not, as a matter of law, constitute an adverse employment action."); Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 354-55 (S.D.N.Y. 2006) ("Nor can Defendants' alleged micro-management of Plaintiff constitute an adverse employment action;" "Excessive scrutiny, without more, does not constitute an adverse employment action.").

Defendants submit that the evidence will show that Plaintiff was not subject to any adverse employment actions and that any acts she complains of were justified or *de minimis* and not entitled to constitutional protection.

### C. Hostile Work Environment

Plaintiff contends Defendants retaliated against her by creating a hostile work environment after she refused to do their political bidding. The Second Circuit recognizes this kind of claim, *see Phillips*, 278 F.3d at 109, but it is treated differently than hostile work environment claims brought pursuant to statute. *See id*; *see also Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2004) (holding same).

"[T]o prove that harassment constitutes an adverse employment action, plaintiff must demonstrate that the actions allegedly taken by defendants created a working environment unreasonably inferior to what would be considered normal for that position. A position may become unreasonably inferior if there are repeated and severe incidents of harassment that, taken as a whole, *would probably deter an average person from the exercise of their First Amendment rights*." *Phillips*, 278 F.3d at 109 (emphasis supplied); *see also Magilton v. Tocco*, 379 F. Supp. 2d 495, 506 (S.D.N.Y. 2005) (holding same). Plaintiff's subjective perception of her situation, even if bolstered by proof of psychological treatment, does not meet that standard.

The acts Plaintiff complains of—lack of staffing and resources, her temporary assignment to Lowville and Rome, the requirement that she verify her arrival to and departure times from work, and so forth—did not constitute a hostile work environment. No one would be deterred from exercising his First Amendment rights under those circumstances. *Phillips*, 278 F.3d at 109.

Even if she might allege or establish some minor annoyance in her working conditions, incidents which are relatively minor and infrequent will not meet the standard for a discriminatorily hostile environment for First Amendment retaliation claims. Incidents that are relatively minor and infrequent will not meet the standard. *Id.*; *Deters*, 368 F.3d at 189.

### D.     Plaintiff Cannot Prove Causation

Even if the Plaintiff could prove that a conversation involving Judge Klim's run for office happened exactly as she says it did, she cannot prove a crucial element to her claim: causation. "In this Circuit, an inference of causation is defeated (1) if the allegedly retaliatory discharge took place at a temporal remove from the protected activity; or (2) if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge." *See Tasadfoy v. Ruggiero*, 365 F. Supp.2d 542, 551 (S.D.N.Y. 2005) (*citing Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 433 (S.D.N.Y. 1999)). *See also Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding in Title VII claim that gap of twenty months between complained of conduct and adverse employment action "suggests, by itself, no causality at all").

Plaintiff's case is very similar to another that was analyzed in detail by the Second Circuit. In *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 308-10 (2d Cir. 2005), the plaintiff, a school administrator, filed a section 1983 First Amendment claim against a Board of Education and a superintendent for retaliating against her because she publicly criticized the superintendent. The plaintiff and the superintendent had an acrimonious history. After she publicly criticized and accused him of improper conduct, the superintendent became the subject of an investigation. The result of the investigation showed that the administrator's complaints lacked merit and led the Board to side with superintendent.

Nearly a year later, the superintendent brought misconduct and other charges against the plaintiff and the board found probable cause to conduct a disciplinary proceeding. She requested and was given a hearing under N.Y. Educ. Law § 3020-a(3) and, in the meanwhile, filed her section 1983 lawsuit. The District Court granted summary judgment and dismissed her complaint. *See id.*.

On appeal, the Second Circuit looked at whether her speech against the superintendent could have been the cause of the Board's actions. *See id.,* 411 F.3d at 314. It found that there was no causal link between the two events. The panel stated:

> [m]ore to the point, the passage of time and the Board's actions defeat any showing of causation. . . . Here, more than a year passed between Burkybile's accusations before the Board and the initiation of disciplinary proceedings. Furthermore, the Board immediately appointed special counsel to investigate the accusations against Russell, and received a full investigative report. When appellees placed Burkybile on leave, they did so on a paid leave basis. They directed a series of medical examinations, as justified by the developing diagnoses, and permitted Burkybile's doctors to observe these examinations. Only after receiving the final medical report did appellees initiate disciplinary proceedings. All of these factors indicate good faith on the part of appellees and destroy any inference of retaliatory animus.

*See id*.

The same analysis applies here. Too much time passed and too many things happened—including an independent investigation recommending Plaintiff's reassignment—for anyone to reasonably link her supposed refusal to "play ball" politically with Defendants in 2002 to acts of retaliation she alleges in 2005 and later. All of these factors indicate good faith on the part of Defendants and "destroy any inference of retaliatory animus." *Id*.

### E. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id*. at 823. If an official's conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the official to believe his conduct did not violate such a right, then that official is protected by qualified immunity. *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007).

The determination of whether an official's conduct was objectively reasonable "is an objective one," *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007), and in making this determination, one looks to all of the circumstances confronting an official, not to the official's "subjective intent." *Anderson v. Creighton*, 483 U.S. 635, 641, (1987). The determination looks to the circumstances at the time of the challenged action. *See Travella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (qualified immunity defense protects an official if it was objectively reasonable for him "at the time of the challenged action to believe his acts were lawful").

This case involves the second prong: when Defendants took any of the acts Plaintiff deems were retaliatory, did they objectively believe, under the circumstances, that their actions did not violate any constitutional right? Nothing in the record even hints that they did.

Plaintiff was assigned to her position as a Court Appointed Referee in 2007 only after an independent investigation by the Inspector General's office determined that she was no longer fit to serve as Chief Clerk. None of the Defendants could objectively or reasonably believe that forwarding on complaints to the Inspector General could reasonably be viewed as retaliatory or unlawful. The Defendants were under an obligation to forward the serious

complaints they received regarding Plaintiff's harassing conduct particularly given Defendant Voninski's recent discovery that a 1997 report found she had engaged in similar misconduct. Once the complaints were under the jurisdiction of the Office of the Inspector General, the Defendants no longer had any influence or control over the investigatory process or the ultimate outcome.[4]  Defendants had no power or mechanism to alter the status of the Plaintiff's employment; any such action had to be taken by the Deputy Chief Administrative Judge for the Courts Outside New York City, the Hon. Jan H. Plumadore, in consultation with the Administrative Director of the Office of Court Administration, Lawrence K. Marks.[5]

Similarly, no reasonable person could believe that Defendant Voninski's decision, for instance, to have Plaintiff check in when she arrived at and left work in 2006 had anything to do with a conversation that happened nearly four years earlier—especially in light of her indisputable and chronic attendance problems.  The same can be said about each of the allegations of retaliation that Plaintiff raises in her complaint.[6]

---

[4] *Contes v. Porr*, 345 F. Supp.2d 372 (S.D.N.Y. 2004) (In a *First Amendment* retaliation claim City's Corporate Counsel who investigated fire dispatch operator's letter claiming sexual harassment by firemen, and who recommend to City Manager, in a memo dated August 7, 2001, that he initiate disciplinary proceedings against the firemen, was entitled to qualified immunity because, "no reasonable lawyer/sexual harassment compliance officer in her position would think that she was violating anyone's *First Amendment* rights by carrying out her investigative and advisory functions in the circumstances of this case" and by taking the steps required by law.… "the City was required to investigate the serious charges made by the female dispatchers and to take action if it appeared that the charges were founded, if only in order to limit its own liability"…"in fact no reasonable lawyer would or could have done anything else").

[5] *Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2003) (finding defendants entitled to qualified immunity where "[t]here is no evidence…that either [defendants] had the authority to determine whether the disciplinary proceedings against plaintiffs should be dismissed or maintained…there is no evidence that [defendants] had authority to influence the City Administrator's decision whether to continue plaintiffs' prosecution…[a]t all times, the power to maintain or drop the prosecution remained with the City Administrator").

[6] "Cases involving unitary events of alleged retaliation for the exercise of a constitutional right require focusing precisely on whether the defendant acted for an impermissible reason, and not merely in response to the plaintiff's conduct…. This is so where the defendant does not dispute that it acted in response to the plaintiff's conduct, but asserts that its response was prompted by a legitimate reason, not an impermissible one." *Greenwich Citizens Committee Inc., v. Counties of Warren and Washington IDA*, 77 F.3d 26, 33 (2d Cir. 1996).  At all times, Defendants' complained of actions were in response to Plaintiff's own conduct.

Plaintiff would have this Court turn the policy behind qualified immunity on its head by transferring its safeguards from the protection of governmental efficiency, economy and accountability, to the protection of delinquent employees who seek to dodge scrutiny of their professional deficiencies and willful misconduct by suddenly alleging a constitutional rights violation at some point in the past.  Here, however, it is impossible to overlook the fact that Plaintiff has failed to rebut the break in the causal link caused by the gap in time between the conversation she alleges occurred and Defendants' actions she now labels "retaliatory."  This Court must not be taken down a road which allows Plaintiff to be shielded from supervisory oversight, as she seemingly requests, despite her misconduct and in the face of an independent determination that her actions were cause for her removal from the position as Chief Clerk.  Even if the alleged conversation did occur exactly as Plaintiff claims--and it did not--there is no support for the practical import of Plaintiff's position that thereafter she should have been insulated from supervision regardless of her own intervening conduct or how much time passed after the alleged constitutional rights violation.

Even assuming *arguendo* that Defendants engaged in an inappropriate conversation for which they were not immune—nothing in our country's jurisprudence supports Plaintiff's apparent conclusion that once a defendant's qualified immunity is gone, it is lost forever. Where Plaintiff failed to document the alleged conversation, failed to make any official contemporaneous complaint about it, and failed to allege retaliatory conduct by the Defendants until years later after her own unsatisfactory job performance was declared a basis for her discharge by an independent authority, she also failed to provide any basis on which this Court can avoid ruling that Defendants are qualifiedly immune for their discretionary, supervisory determinations regarding Plaintiff.

### E. Damages

Defendants contend that the evidence at trial will demonstrate that Plaintiff is not entitled to judgment in her favor. However, if the jury finds in favor of Plaintiff, they submit the following position regarding damages.

Defendants believe the evidence will show that Plaintiff did not suffer any injury, economic or emotional, and that she is not entitled to any compensatory damages. Nominal damages, however, may be awarded when Plaintiff has been deprived of a right or has suffered no actual damages as a natural consequence of that deprivation. The jury should be instructed that if they find that Plaintiff has suffered no injury, other than the fact of the deprivation of a legal right, it may award, if it chooses, nominal damages to Plaintiff not to exceed $1.00. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004); *Robinson v. Cattaraugus County*, 147 F.3d 153, 162 (2d Cir. 1998).

### E. Punitive Damages

Punitive damages are only available in a section 1983 action when: (1) a defendant's violation of federal law was intentional; (2) a defendant's conduct is shown to be motivated by evil motive or intent; or (3) when it involves reckless or callous indifference to the federally protected rights of others. *See McCardle v. Haddad*, 131 F.3d 43, 53 (2d Cir. 1997) (*citing Smith v. Wade*, 461 U.S. 30, 56 (1983)); *see also Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (affirming vacatur of jury award of punitive damages in absence of evidence of evil motive or intent). *See also Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997) (holding same). Absent evidence of this nature, the plaintiff is not entitled to a jury charge on punitive damages. *See id*.

There is no evidence whatsoever of this kind of conduct here and Plaintiff is not entitled to a jury charge for punitive damages. *See id*.

## CONCLUSION

Defendants respectfully submit that the evidence at trial will establish that they did not violate Plaintiff's constitutional rights. She was never instructed to spy on or dig up dirt on Judge Klim—and even if that conversation could have happened exactly like she said it did, there is no evidence that the retaliatory acts she alleges were causally linked to it. Too much time passed and too many intervening events occurred to link any actions taken against Plaintiff, years afterwards. For much the same reasons, Defendants are entitled to qualified immunity.

SUBMITTED ON BEHALF OF ALL DEFENDANTS by:

Dated:   April 25, 2011

GILBERTI STINZIANO HEINTZ
   & SMITH, P.C.

/s/ *Gary T. Kelder*
/s/ *Timothy J. Lambrecht*
_____
Gary T. Kelder, Esq., Of Counsel (610536)
Timothy J. Lambrecht, Esq. (510390)
*Attorneys for Defendant, John R. Voninski*
555 East Genesee Street
Syracuse, New York 13202-2159
Tel. (315) 442-0100
Fax. (315) 442-0169

cc:  All Counsel of Record (by ECF)